1997 ND 62

**Elizabeth Jane SUMRA, Plaintiff and Appellee,**

v.

**Kulvinder Singh SUMRA, Defendant and Appellant.**

**Civil No. 960129.**

Supreme Court of North Dakota.

April 1, 1997.

Maureen Holman (argued), Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for defendant and appellant.

Jay H. Fiedler (argued), Pearson, Christensen, Larivee, Clapp, Fiedler & Fischer, Grand Forks, for plaintiff and appellee.

MARING, Justice.

[¶ 1] Kulvinder Sumra appeals that portion of the judgment of divorce entered March 15, 1996, which grants Elizabeth Sumra permission to move with the parties' three minor children to Wales. We affirm the judgment.

[¶ 2] Kulvinder and Elizabeth Sumra were married in February 1981 in both India and Great Britain. At the time of their marriage, Kulvinder was working as a physician in Bangor, Wales, where Elizabeth was a nursing student. Six months after their marriage, in August of 1981, Kulvinder went to Newfoundland, Canada, to seek work as a physician. Elizabeth completed her nursing exams and joined her husband in October 1981 with the understanding that the couple would live in Canada a short time and return to Wales. In June 1983 the parties moved to Cincinnati, Ohio, where Elizabeth worked as a nurse. Shortly after arriving in Ohio, Kulvinder left to visit his brother in British Columbia, Canada, and to investigate job opportunities in North Dakota. This trip lasted four to five months. In October 1983 Kulvinder obtained permanent employment as a physician in Park River, North Dakota, and Elizabeth joined him in Park River, where the couple has since lived.

[¶ 3] Three children were born of the marriage—Amar, born August 1984; Sarvan, born February 1986; and Nesta, born December 1987. Kulvinder has devoted the majority of his time to his profession, and Elizabeth has worked in her husband's clinic sporadically since the children were born. Elizabeth has always maintained close ties to her family in Wales, and has continually expressed a desire to return to Wales throughout her marriage to Kulvinder. Kulvinder became a naturalized United States citizen, and Elizabeth maintains her Welsh citizenship. Elizabeth took the children on several extended visits to Wales to see her family, and the children attended school in Wales, participated in many activities, and have gained a rough understanding of the Welsh language.

[¶ 4] In October 1994 Elizabeth sued for divorce. Trial on the matter was held in October and November of 1995. The parties contested all issues including custody, child support, property division, and whether Elizabeth should be permitted to take the children with her to live in Wales. The trial court heard testimony from over twenty witnesses and issued detailed findings of fact, conclusions of law, and order for judgment,

which awarded custody of the children to Elizabeth and granted Elizabeth permission to move to Wales, taking the children with her.

[¶ 5] Kulvinder asserts the trial court erred when it found it was in the best interests of the children to move to Wales with their mother. Specifically, Kulvinder alleges the harm to his relationship with the children is not outweighed by the advantages of the children moving to Wales with Elizabeth; the trial court placed too much weight on the children's expressed preference; and he does not have a forum to enforce visitation rights. Kulvinder does not seek a change of custody, rather, only that Elizabeth remain in North Dakota with the children.

[¶ 6] This case differs in two ways from *Stout v. Stout,* 1997 ND 61, 560 N.W.2d 903 also released today. First, *Stout* dealt with a motion for removal of the child from North Dakota *after* the original divorce decree had been entered and second, *Stout* dealt with removal to another state (emphasis added). In this case, Elizabeth's motion to remove the children was made as part of the initial custody determination, not as a motion after the initial custody award[1] and involves removing the children to another country. Because Kulvinder does not seek a change of

custody, but opposes removal of the children to Wales, we apply the same analysis we applied in *Stout* to this case. *Id.;* N.D.C.C. § 14–09–07. When making an original custody award N.D.C.C. § 14–09–06.2[2] lists thirteen factors which a trial court is to consider. The trial court heard six days of testimony from twenty-two witnesses, including experts presented by both parties, and conducted an in camera interview with each of the three children. In the extensive findings of fact, conclusions of law, and order for judgment, the trial court presented a detailed analysis of the application of each of these statutory factors in reaching its decision to award sole legal and physical custody to Elizabeth.

[¶ 7] On the issue of custody, the trial court found both parents to be fit and loving, but the best interests of the children would be served by granting sole legal and physical custody to Elizabeth, taking into account her plans to move to Wales. The court found Elizabeth has always been the children's primary caretaker and the children have a significantly closer relationship with Elizabeth than with Kulvinder, and the children have had "significant conflicts with Kulvinder in the past in terms of his discipline, temperament, and his lack of interest and attention to them." The court also found the methods in which Kulvinder disciplined his eldest son,

1. In *Stout,* Julene also petitioned to remove the minor child to Arkansas as part of the original divorce proceeding, which request was denied. That case came to our court on an appeal as a result of the denial of a subsequent motion by Julene for removal.

2. 1. For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:
   a. The love, affection, and other emotional ties existing between the parents and child.
   b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
   c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
   d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.
f. The moral fitness of the parents.
g. The mental and physical health of the parents.
h. The home, school, and community record of the child.
i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
j. Evidence of domestic violence. . . .
k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interest. . . .
l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.
m. Any other factors considered by the court to be relevant to a particular child custody dispute.

Amar, constituted abuse under N.D.C.C. § 50–25.1–02(2), and § 50–25.1–02(4), and as a result, all three children have been left with a fear of their father's temperament. The court found the children have expressed a preference to remain with their mother, and the children's preference is reasonable and they are of sufficient age, intelligence, and experience to express a preference. The court also noted the expert testimony presented by both sides agree Elizabeth is the more appropriate custodial parent.

[¶ 8] It is clear the trial court also gave Elizabeth's proposed move to Wales careful consideration. A determination that it is in the best interests of the children to grant permission to the custodial parent to change their residence is a finding of fact and will not be disturbed unless it is clearly erroneous. *Stout v. Stout,* 1997 ND 61, ¶ 7, 560 N.W.2d 903, 906. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *McDonough v. Murphy,* 539 N.W.2d 313, 316 (N.D.1995); *Stout* at ¶ 7, 560 N.W.2d at 906. After reviewing all the evidence presented we determine the trial court's decision to grant Elizabeth the right to move the children to Wales is not clearly erroneous.

[¶ 9] Our court has long articulated the standard for resolving disputes over the removal of a child from the state is "the best interests of the child." *Stout* at ¶ 9, 560 N.W.2d at 906; *Thomas v. Thomas,* 446 N.W.2d 433, 434 (N.D.1989). The burden of proof is on the custodial parent wishing to remove the children. *Id.* In *Stout,* we establish a four factor analysis which is to be applied to the facts of each case with the primary concern being the best interests of the child:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,
2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the non-custodial parent,
3. The integrity of the non-custodial parent's motives for opposing the move,
4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the non-custodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Stout* at ¶ 34, 560 N.W.2d at 913.

[¶ 10] Our review of this case begins with the application of the first factor to the facts of this case. The record indicates Elizabeth was born and raised in Wales, United Kingdom and Kulvinder was born in Punjab, India. The parties met in Wales where Kulvinder was working at the time. Kulvinder immigrated to Newfoundland and then to the United States, specifically to Cincinnati, Ohio, and finally to Park River, North Dakota. Elizabeth followed him but continually expressed her wishes to remain near her home and family in Wales. The record indicates Elizabeth's extended family from Wales has been a frequent visitor at the Sumra home and Elizabeth has visited Wales with the minor children. The children have on occasion briefly attended school in Wales and the children have a rudimentary knowledge of the Welsh language and culture. The trial court found Kulvinder also has family in England and the Sumra children have no relatives who live in the United States other than their parents.

[¶ 11] The court found Elizabeth has always been the children's primary caretaker and they are emotionally very attached to her. We said in *Stout,* a court shall not limit itself solely to enhanced economic opportunities for the custodial parent, but must also assess less tangible benefits of the relocation. *Stout* at ¶ 34, ¶ 44, 560 N.W.2d at 913, 915. In this case, prospective advantages include a supportive extended family.

[¶ 12] In addition, the trial court found North Wales where the children would reside, is similar to North Dakota in that it is a rural and agricultural area, the English language is used and the dress is similar. Based on this evidence, the trial court found the children would be able to adjust to the

geographical move with their Mother to Wales.

[¶ 13] The evidence in the record establishes the likelihood of Elizabeth obtaining satisfactory employment for her and the children in Park River is not strong. Elizabeth was not suitably trained or experienced for most of the nursing positions presented, or the positions were located significant and prohibitive driving distances from Park River, North Dakota. Her opportunities of employment in a small geographical area were found to be limited and the trial court concluded some change in geographical residence would probably be required in the future, in any event. Elizabeth is at a point where she must now reenter the job market. The record indicates Elizabeth has been offered a nursing position in Wales. In *Stout*, we recognize the improvement of the general quality of life for the custodial parent, ordinarily, will indirectly benefit the child. *Stout* at ¶ 18, 560 N.W.2d at 909.

[¶ 14] Kulvinder argues that the trial court placed too much weight on the preference of the children to live with their Mother in Wales. We have held preference of the child is one factor the trial court may consider in determining "the best interests of the child" in the context of a motion to remove the child from the state. *Novak v. Novak*, 441 N.W.2d 656, 658 (N.D.1989). A careful review of the record reveals the children's preference in this case was only one of several factors evaluated by the trial court in reaching its conclusion. It was certainly not the only factor and there is no evidence that it was the dispositive factor. The court noted the children's preference was reasonable and the children all had spent sufficient time in Wales to become acquainted with the culture and lifestyle of that country and with relatives, neighbors, and peers. It was not error on the part of the trial court under the facts of this case to give some consideration to the children's stated preference.

[¶ 15] The second factor requires an examination of the motives of the custodial parent in requesting the removal of the children from the state. The court specifically must consider whether the motive is to defeat or deter the visitation rights of the non-custodial parent. The trial court found based on the evidence presented, "Elizabeth's desire to return to Wales is not for the purpose of denying visitation or other contact between the children and Kulvinder." In fact, the evidence reveals since the parties separated Kulvinder exercised most of his visitation rights but canceled some visitation periods and left the Park River area without advising Elizabeth of his whereabouts in case of an emergency. There is nothing in the record to indicate Elizabeth would not comply with visitation arrangements after the move.

[¶ 16] The third factor requires a determination of whether the non-custodial parent's opposition to the motion to remove the children is based on a legitimate desire to maintain the parent-child relationship or whether other motives are at work. The record indicates the relationship between Elizabeth and Kulvinder is one in which Kulvinder has controlled or attempted to control Elizabeth throughout the duration of their marriage. There is evidence of Kulvinder's dominance, rigidity, and uncooperativeness with regard to decisions to allow the children to travel out of North Dakota, even into Minnesota for a hockey tournament. This evidence combined with his failure to fully exercise his visitation rights during the time the parties were separated certainly casts some doubt on the integrity of Kulvinder's motives. We note the credibility of both parties was at issue in the proceedings below. The trial court found Elizabeth's credibility was questioned because of her disregard of an order issued regarding the preservation of $18,000.00 in her possession. She utilized some of these funds for her attorney's fees, among other things. The trial court found "having considered the circumstances of her actions, including the fact that it involved the approval, at least in part by her prior attorney, I am not concerned that she will disregard subsequent court orders." However, the trial court found Kulvinder's credibility was significantly impacted in several areas by false and evasive information provided under oath. In addition, there is evidence Kulvinder reduced his monthly income by $10,000.00 per month at the time of the divorce. The record supports the trial court's findings of fact. We

conclude the evidence suggests other motives than a legitimate desire to exercise visitation may be at work in this case.

[¶ 17] Finally, there must be a realistic opportunity for visitation which will maintain and encourage the non-custodial parent's relationship with the child. The trial court rightfully pointed out the high mobility of our society today when it noted there was a strong likelihood that Elizabeth would have to move a significant distance from Park River in order to find suitable employment resulting in the need for either Kulvinder or the children to travel a significant distance to implement visitation. The trial court stated: "for example, a move to Fargo would require 3 hours travel one way, a move to Bismarck 5 hours, a move to Minneapolis 7 hours by car and at least 2½ by car/plane. A flight to and from Wales would involve 12 hours. Consequently in terms of time, our modern age allows the measure of distance to be done in hours rather than days. Further, instant communication is available through phone links between children and parents this far apart." The court did recognize granting Elizabeth permission to remove the children to Wales would adversely affect their relationship with Kulvinder in terms of the regularity, continuity and to some extent the quality of visitation. However, the court set up an extended visitation plan for Kulvinder and the children. We held in *Stout*, a move sought in good faith and to gain legitimate advantages for the custodial parent and the child must not be denied simply because visitation cannot continue in the existing pattern. *Stout* at ¶ 46, 560 N.W.2d at 916. The extended periods of visitation allow the children and Kulvinder longer periods together during which they can establish and nurture the parent-child relationship. The evidence also indicates that Kulvinder's compensation and income clearly provide for payment of the travel expenses which will be necessarily incurred. There was testimony regarding the Welsh school calendar and the fact it would allow the children several periods of extended visitation with Kulvinder. The court provided the visitations may be executed in the United States, Canada, or Wales. In addition, the court ordered the parties could modify visitation by mutual agreement and allowed for unlimited communication between the children and Kulvinder via telephone, audio and videotape, electronic mail and regular mail.

[¶ 18] In reviewing the record, we conclude the trial court weighed and balanced the appropriate factors and properly concluded any detrimental effect to Kulvinder's relationship with his children was outweighed by the advantages to Elizabeth and the children in moving to Wales.

[¶ 19] Kulvinder argues that because he is one of two physicians in a small town, he "does not have the luxury of taking eight weeks off to spend with the children in North Dakota" or to "fly to Wales to be with the children." Spending time with one's children is not a "luxury," but a parental responsibility. However, we realize that Kulvinder may have some difficult choices to make, between his patients and children, but he can have the children in North Dakota with him avoiding the necessity of "taking eight weeks off" from his practice. Kulvinder argues he will not have the financial resources to "fly off to Wales" to see the children. Again we are unpersuaded. As previously noted, Kulvinder reduced his income by $10,000.00 per month during the pendency of this litigation, and still has a net monthly income of over $8,400.00. Kulvinder will certainly have the financial resources to exercise his visitation. The only barriers to the exercise of his visitation are Kulvinder's own choices and actions.

[¶ 20] Finally, Kulvinder argues he has no forum in which to enforce his visitation rights should Elizabeth attempt to frustrate them. Kulvinder asserts the return of the children to the United States for visitation is discretionary under the Hague Convention, and nothing would prevent a Welsh court from requiring the visitation take place in Wales. We find this argument unpersuasive because there is nothing in the record to indicate Elizabeth may attempt to limit Kulvinder's visitation with the children. In addition to North Dakota, the trial court ordered Canada and Wales as locations in which Kulvinder could exercise visitation. There is nothing in the record other than Kulvinder's own choices, which would lead us to believe that

Kulvinder would have any barriers to exercising his rights of visitation.

[¶ 21] After our careful review of the record and application of the four factor analysis enunciated in *Stout* today, we cannot state that the trial court's findings of fact were clearly erroneous. We conclude the evidence in the record supports the findings of fact and affirm the trial court's judgment granting Elizabeth permission to remove the children to Wales.

[¶ 22] VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

SANDSTROM, Justice, concurring in the result.

[¶ 23] For the reasons set forth in my dissent in *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903, I concur in the result here.

[¶ 24] Dale Sandstrom