1998 ND 17

**Rebecca J. PAULSON, n/k/a Rebecca J. Wodrich, Plaintiff and Appellant,**

v.

**Raymond J. BAUSKE, Defendant and Appellee.**

**Civil No. 970210.**

Supreme Court of North Dakota.

Jan. 21, 1998.

Leslie Johnson Aldrich, of Johnson Law Office, Fargo, for plaintiff and appellant.

Wayne T. Anderson, Fargo, for defendant and appellee.

MESCHKE, Justice.

[¶ 1]Rebecca J. Wodrich appealed an order denying her request to move with her son, Mitchell, to the State of Colorado. She also appealed an order denying her motion to reconsider based upon newly discovered evidence. We reverse both orders and remand with instructions the trial court enter a judgment permitting the move and establishing an appropriate visitation schedule for Mitchell and his father, Raymond J. Bauske.

[¶ 2]Raymond and Rebecca were divorced in September 1993, and the trial court placed custody of Mitchell, their only child born March 30, 1991, with Rebecca. Raymond pays $378 per month child support, and he has visitation with Mitchell every other weekend from 4:30 p.m. Friday to 7:30 p.m. on Sunday, and every Tuesday and Thursday from 4:00 p.m. to 7:00 p.m. Raymond also has holiday visitations and a six-week summer visitation.

[¶ 3]After their divorce, Rebecca and Raymond each remarried and continued to live in the Fargo–Moorhead area.[1] Rebecca married Michael Wodrich. He completed college studies for a degree in animal science and zoology and then opened a pet store in Moorhead with his father. When the pet store failed, Michael began a nationwide search for employment in his field. He accepted a job with a zoo in Pueblo, Colorado, beginning on April 1, 1997. Rebecca then moved for permission to move with Mitchell to Colorado. In March 1997, Rebecca had completed studies in travel business at Interstate Business College. She described to the court numerous employment opportunities for her in the travel field in Colorado.

[¶ 4]After a hearing, the trial court found "no evidence that allowing a relocation at this time would improve either the custodial parents' or the child's quality of life" and denied the motion. The court expressed concern that allowing the move would "necessarily reduce contact" between Mitchell and his extended family in the Fargo–Moorhead area. The court also expressed concern Rebecca "has no current employment in Colorado" and about uncertainties "as to housing, schools and other services available" in Colorado.

[¶ 5]Shortly after, Rebecca moved to reconsider based on newly discovered evidence. She introduced evidence she had a firm job offer from a travel agency in Colorado Springs, near Pueblo, Colorado, she and Michael had sold their home in Moorhead and had made financial arrangements for housing in Colorado, and Michael's employment with

the zoo was going very well. After a hearing, the trial court denied the motion for reconsideration, stating the additional evidence "does not persuade this Court that the best interests of the parties' minor child will be served by allowing the requested location." Rebecca appealed.

[¶ 6]A custodial parent must get judicial permission to move with her child to another state if the noncustodial parent does not consent to the move. NDCC 14-09-07. The custodial parent has the burden of proving the move from the state is in the best interests of the child. *Sumra v. Sumra,* 1997 ND 62, ¶ 9, 561 N.W.2d 290. The trial court's decision on whether to allow the removal of a child from this state is a finding of fact that we will not reverse on appeal unless it is clearly erroneous under NDRCivP 52(a). *Matter of B.E.M.,* 1997 ND 134, ¶ 9, 566 N.W.2d 414. A finding of fact is clearly erroneous if it is apparent to the reviewing court a mistake has been made, if the finding was induced by an erroneous view of the law, or if there is no evidence to support it. *Id.*

[¶7]In our recent decision, *Stout v. Stout,* 1997 ND 61, ¶¶ 32 and 34, 560 N.W.2d 903, we described the competing interests the trial court must consider and the four-factor analysis it must make in deciding whether an out-of-state move is in the best interests of the child:

> In every relocation dispute, the court must try to accommodate the competing interests of the custodial parent who desires to seek a better life for herself and the children in a different geographical area; the child's interest in maintaining a meaningful relationship with the noncustodial parent; the noncustodial parent's interest in maintaining a meaningful relationship with the child; and finally, the state's interest in protecting the best interests of the child.

> \*   \*   \*   \*   \*   \*

> [W]e require the trial courts of this state, when considering requests to move a child out of North Dakota, to apply the following four-factor analysis to the facts of each case with the primary concern being the best interests of the child:

---

1. Rebecca previously received court permission to move to Moorhead, Minnesota, across the Red River adjacent to Fargo.

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

[¶ 8]The trial court specifically found that factors two, three, and four presented no obstacle for Rebecca moving with Mitchell to Colorado. The court found Rebecca's motivation to move was not intended to defeat or deter Raymond's visitation with Mitchell. Likewise, the court found Raymond's opposition to the move was not based upon "ill-will or spite," but came from a genuine concern to maintain frequent and meaningful contact with Mitchell and to preserve their father-son relationship. The court also found that it would be possible to restructure visitation "to preserve and foster" Raymond and Mitchell's relationship.

[¶ 9]The court found the only obstacle to the move was the prospective advantages of the move would not, in the court's opinion, "improve either the custodial parents' or the child's quality of life." After careful review of the record, we conclude this finding by the trial court is clearly erroneous and does not give sufficient credence to the need for keeping the custodial family intact.

[¶ 10]We approved one mother moving her children to Glendale, California, when her new husband, the children's stepfather, took a job as a master plumber there after becoming unemployed in this state. *Hedstrom v. Berg,* 421 N.W.2d 488, 490 (N.D.1988). We said a stepparent naturally takes on a family relationship with children of a spouse and,

consequently, the circumstances of each are interrelated. *Id.* In *Hedstrom,* we emphasized the move was important so the custodial family could stay together as a unit, and thereby maintain continuity and stability.

[¶ 11]In another case, we stressed the "stability and continuity of the integrated family unit" in approving a mother's move with her son to Colorado Springs, Colorado, where the mother and her new husband would have increased job opportunities in their career fields of nursing and computers. *Novak v. Novak,* 441 N.W.2d 656, 658 (N.D.1989). Again, in *Thomas v. Thomas,* 446 N.W.2d 433, 435 (N.D.1989), we upheld a mother's move with her children from Bismarck to Brainard, Minnesota, to accompany the mother's new husband, whose job required him to relocate there. In *Thomas,* we again emphasized the dispositive importance, even over the childrens' contrary preferences, of maintaining "the continuity and stability of the integrated family unit."

[¶ 12]This case has striking similarities with these prior cases. Rebecca's new husband attempted to earn a living here in his chosen field by owning and operating a pet store. The venture failed, and Michael's search for work yielded the Colorado job. Rebecca also then found better job opportunities in Colorado in her chosen career as a travel agent. The evidence here clearly shows long-term career opportunities and financial advantages for this family in Colorado. Michael's job there makes Rebecca's and Mitchell's move necessary to keep this family intact. As we explained in *Matter of B.E.M.,* 1997 ND 134, ¶ 16, 566 N.W.2d 414, "[i]t is axiomatic that a newly-wed couple wants to live together and that the child is benefited by the satisfaction the custodial parent derives from residing with her spouse."

[¶ 13]In its original order, the trial court expressed particular concern that Rebecca did not have employment in Colorado and that the family owned a home in Fargo–Moorhead with good schools for Mitchell, but uncertainties existed regarding appropriate housing and education services in Colorado.[2]

---

2. Raymond asserted additional reasons against the move. He said the distance would preclude him from continuing to provide assistance for Mitchell with school work and from taking

Mitchell to church and Sunday school on a regular basis. He also raised concerns about Michael having a past record of criminal convictions in-

With her motion for reconsideration, Rebecca introduced evidence she had secured a firm job offer in Colorado at $6.50 per hour with opportunity for raises and promotions. She also introduced evidence their home in Moorhead had been sold, giving them a source of money for a down payment on a house in Colorado. Although Mitchell, a kindergarten student at the time of the first hearing, has educational opportunities satisfactory to both parents in Fargo–Moorhead, there is no record evidence suggesting he would be unable to obtain similar educational services in Colorado. The trial court did not specifically address this evidence. Instead, the court denied the motion for reconsideration, stating only that it was not persuaded the move would be in Mitchell's best interests.

[¶ 14]Considering the court's finding Rebecca has a proper motive for moving, together with its finding the court could restructure visitation to preserve Raymond and Mitchell's relationship, we conclude the court's denial of the move because it would not be in Mitchell's best interests is clearly erroneous.

■ [¶ 15]The procedure in NDCC 14–09–07 was created to safeguard the visitation rights of a noncustodial parent and to preserve the noncustodial parent's relationship with the child, when the custodial parent wants to move the child out of state. See *Hanson v. Hanson,* 1997 ND 151, ¶ 10, 567 N.W.2d 216. Although cost and distance will make it impossible to continue the same frequency of visits between Raymond and Mitchell, our precedents, such as *Stout v. Stout,* 1997 ND 61, ¶ 31, 560 N.W.2d 903, and *Matter of B.E.M.,* 1997 ND 134, ¶ 20, 566 N.W.2d 414, instruct that the court can and must restructure visitation to preserve their relationship with less frequent but more extended visits.

[¶ 16]Raymond made extensive suggestions to the court for restructuring visitations if the court approved the move. Rebecca concurred with almost all of his suggestions. She agreed to summer visitation between June 20 and August 20, if compatible with the school year. She also agreed to a week of Christmas visitation and additional visita-

tion during school spring break. Rebecca also said she would be willing to pay half of the transportation costs for visitation. Rebecca's concessions on these matters demonstrate a spirit of cooperation that will help the court in restructuring visitation.

[¶ 17]We reverse the trial court's orders denying Rebecca's request to move with Mitchell to the State of Colorado, and we remand with directions to enter a judgment granting the motion and restructuring visitation to preserve and foster Raymond and Mitchell's father-son relationship.

[¶ 18]VANDE WALLE, C.J., and MARING, J., concur. NEUMANN, J., concurs in the result.

SANDSTROM, Justice, dissenting.

[¶ 19]Because the trial court carefully, fairly, and properly followed the law and found the facts, I dissent from the majority's reversal.

[¶ 20]The North Dakota Rules of Civil Procedure do not provide for a "motion to reconsider" or a "motion for reconsideration." We have said we treat a "motion to reconsider" as a "motion to alter or amend the judgment under N.D.R.Civ.P. 59(j) 'for purposes of tolling the time period for filing [a] notice of appeal.'" *Austin v. Towne,* 1997 ND 59, ¶ 7, 560 N.W.2d 895 (quoting *Continental Cas. Co. v. Kinsey,* 499 N.W.2d 574, 582 (N.D. 1993)). Even though the trial court said Wodrich's motion was untimely, it did not summarily dismiss it, but allowed her to proceed and held a full hearing with affidavits and testimony. The trial court then took the matter under advisement, and subsequently issued a written decision denying the motion. Wodrich then appealed the denial of the "motion to reconsider" and the denial of permission to relocate the child.

[¶ 21]Procedurally, the majority fails to independently analyze the main proceeding, and fails to apply the appropriate appellate standard of "abuse of discretion" to the "motion to reconsider." *Austin* at ¶ 8 ("A decision on a N.D.R.Civ.P. 59 motion is within the sound discretion of the trial court.").

cluding DUI, issuing checks without sufficient funds, and driving an unregistered vehicle. The

trial court did not make findings of fact about or specifically address any of these items.

[¶ 22]The trial court carefully followed the majority's four-part analysis in *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903. Here, the majority's analysis ignores the specific finding by the trial court as to the proximity to extended family, and to the special education needs of the child.

[¶ 23]The extended families of both parents live near the father. Under the first prong of the *Stout* analysis, the trial court specifically found:

"Most of the child's extended family resides in the Fargo, North Dakota/Moorhead, Minnesota area and a move to Colorado will necessarily reduce contact between the child and his father, step mother, half-sisters and extended family."

[¶ 24]In *Stout* at ¶¶ 38–39 and 45, the majority thought the proximity of the extended family was a very important consideration:

"[¶ 38]We begin our analysis of Julene's request to move to Arkansas with Tell by applying the first factor articulated above—the prospective advantages of the move in improving the custodial parent's and child's quality of life.

"[¶ 39]Neither James nor Julene has any family in North Dakota. If allowed to move to Arkansas, Julene would be within fifty miles of her parents and a sister, as well as a two-hour drive from James' parents. In the original divorce proceeding, the trial court incorporated by reference the partial transcript of proceedings of the original hearing into its December 6, 1995, Memorandum Decision and Order. In that transcript, the trial court specifically noted, '[t]here is an advantage on the other hand to having your family close and your support system. I don't deny that it's an advantage.' The trial court clearly found it would be an advantage to Julene and Tell to have extended family close by.

\*      \*      \*      \*      \*      \*

"[¶ 45]We believe the trial court erred in its analysis of the economic and non-economic advantages of the proposed move. The court failed to consider the benefits a network of close family members would provide and other non-economic advantages."

This analysis was unaffected by any evidence presented "on reconsideration."

[¶ 25]The trial court also specifically found, and the majority ignores:

"3) Mitchell J. Bauske has difficulty in school and suffers from a learning disability which problems are being addressed in his current school system locally.

\*      \*      \*      \*      \*      \*

"Finally, uncertainties exist as to housing, schools and other services available to the child upon relocation."

[¶ 26]Even "on reconsideration," Wodrich failed to present any admissible evidence as to meeting Mitchell's special learning needs if relocation were permitted.

[¶ 27]Sadly, the majority continues its inexorable drive to substitute completely "the happiness of the custodial mother" for the "best interests of the child."

[¶ 28]I would affirm the decision of the trial court.

[¶ 29]Dale V. Sandstrom