1998 ND 224

In the Interest of Hunter James Botnen LUKENS, a minor child.

Nathan BOTNEN and his minor child, Hunter James Botnen Lukens, Plaintiffs and Appellees,

v.

Kathryn LUKENS, Defendant and Appellant,

v.

Fred LUKENS and Jane Lukens, Intervenors.

Nathan BOTNEN and his minor child, Hunter James Botnen Lukens, Plaintiffs and Appellees,

v.

Kathryn LUKENS, Defendant,

v.

Fred LUKENS and Jane Lukens, Intervenors and Appellants.

Civil Nos. 980109, 980128.

Supreme Court of North Dakota.

Dec. 22, 1998.

Karen K. Braaten, of Karen K. Braaten, Ltd., Grand Forks, ND, for plaintiffs and appellees N.B. and his minor child, H.J.B.L.

Patti J. Jensen, of Lindquist, Jeffrey & Jensen, East Grand Forks, MN, for defendant and appellant K.L.

Jay H. Fiedler, of Pearson, Christensen, Larivee, Clapp, Fiedler, Fischer & Jensen, Grand Forks, ND, for intervenors and appellants Fred Lukens and Jane Lukens.

NEUMANN, Justice.

[¶ 1] Kathryn Lukens, Fred Lukens, and Jane Lukens appealed an amended judgment in Nathan Botnen's action to determine custody of Hunter James Botnen Lukens. We affirm the trial court's denial of Fred Lukens's and Jane Lukens's motion for custody. We reverse the trial court's custody award and remand for redetermination.

[¶ 2] Nathan Botnen and Kathryn Lukens are the unmarried biological parents of Hunter James Botnen Lukens, who was born on August 20, 1997. When Kathryn Lukens left North Dakota in September 1997 to begin her studies at the University of Georgia on a track scholarship, she left Hunter with her parents, Fred Lukens and Jane Lukens, in Aneta, North Dakota. When Nathan Botnen, a student at the University of North Dakota in Grand Forks, became dissatisfied with the visitation Fred Lukens and Jane Lukens afforded him with Hunter, he sued for custody, proposing he and Kathryn Lukens be awarded joint legal custody of Hunter, and that he be awarded physical custody of Hunter, with Kathryn Lukens awarded liberal visitation. Kathryn Lukens answered and counterclaimed for custody of Hunter, with reasonable visitation for Nathan Botnen. Fred Lukens and Jane Lukens intervened, seeking custody of Hunter, with reasonable visitation for Nathan Botnen and Kathryn Lukens, "[i]n the event that custody is not awarded to Defendant Kathryn Lukens."

[¶ 3] The trial court found there has been "grandparental bonding" but "there has been no psychological parental bonding between Hunter and his Intervenor maternal grandparents," and denied the Intervenors' motion for custody. The trial court awarded joint legal custody of Hunter to Nathan Botnen and Kathryn Lukens and made the following physical custody award to the parents:

1. *Child Custody:* ... Katie indicated to the Court that if an award of Hunter's physical custody was made contingent upon her re-prioritizing her own goals in Georgia, she would do so.... Therefore, if, effective with the termination of her current spring academic quarter at the University of Georgia, Katie opts to interrupt her educational and athletic aspirations for a period of two years, the Court awards her and Nate *joint physical custody* of Hunter as well. During this two year period of time, the term "joint physical custody" is intended to mean that the parties will share equally in Hunter's nurturing, care and upbringing, both financially and emotionally....

2. *Visitation:* Should circumstances result in the joint physical custody arrangement, *effective April 11, 1998,* the following visitation schedule shall be placed in effect *unless* Nate and Katie mutually agree otherwise.

(a) Nate shall have Hunter every weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. until the weekend following Katie's completion of her current spring academic quarter. Thereafter, and through July 1998, the parties shall alternate week-long visitation periods from Sunday at 6:00 p.m. through the following Friday at 6:00 p.m.. Commencing August 2, 1998, the week-long visitation periods shall be expanded to alternating two week periods *through October 1998. Thereafter, the visitations shall be alternated monthly through February 1999 and then, when Hunter is approximately one and one half years old, the visitation periods shall alternate every four months until he reaches school age, subject to exceptions stated below. At that time, and again unless the parties have mutually agreed otherwise, the Court will re-address visitation in light of Hunter's school schedule.*

\*     \*     \*     \*     \*     \*

Should Katie reconsider her words to the Court on March 26th and opt to continue her education and athletic endeavors without interruption at the University of Georgia, Plaintiff Nathan Botnen shall be Hunter's designated physical custodial parent, with reasonable and liberal visitation rights to Katie.

Kathryn Lukens and the Intervenors appealed. Kathryn Lukens contends the trial court erred in admitting evidence from an expert and abused its discretion in awarding joint physical custody. Intervenors contend the trial court's denial of their custody petition

was clearly erroneous and the court's alternating physical custody award was clearly erroneous.

## I. Intervenors' Claim

[¶ 4] Intervenors contend the trial court's denial of their custody petition was clearly erroneous.

[¶ 5] Custody determinations are treated as findings of fact, which we do not set aside unless clearly erroneous. *Goter v. Goter*, 1997 ND 28, ¶ 8, 559 N.W.2d 834. Although their rights are not absolute, "[p]arents generally have a right to the custody and control of their children superior to the right of any other person." *Id.* at ¶ 7.

[¶ 6] In resolving custody disputes between parents and third parties, courts "must be cognizant of the public policy favoring the family relationship between parent and child as well as the parents' fundamental right to the custody and companionship of their children." *Hust v. Hust*, 295 N.W.2d 316, 318 (N.D.1980). "[C]ourts are reluctant to remove a child from the parents' custody unless it is necessary to prevent serious detriment to the welfare of the child." *Id.* at 318–19. "[A]n award of custody to the grandparents rather than to one or both of the child's natural parents is clearly erroneous unless exceptional circumstances require that such a custody disposition be made 'in the best interests of the child.'" *Id.* at 319. "The court cannot award custody to a third party, rather than the natural parent, under a 'best interest of the child' test unless it first determines that 'exceptional circumstances' exist to trigger the best-interest analysis." *Worden v. Worden*, 434 N.W.2d 341, 342 (N.D.1989).

[¶ 7] Intervenors contend courts should "simply apply a 'best interest' standard to all custodial cases, regardless of who the parties are." We have rejected such arguments since *Hust v. Hust*, 295 N.W.2d 316 (N.D. 1980). We decline the invitation to abandon the "exceptional circumstances" requirement before awarding child custody to a nonparent.

[¶ 8] The trial court found "there has been no psychological parental bonding between Hunter and his Intervenor maternal grandparents," and "there was insufficient evidence to sustain a finding of any 'exceptional' circumstances and/or any serious threat of harm or detriment to Hunter which would warrant a custody award to the Intervenors." Those findings are not clearly erroneous. The trial court's denial of the Intervenors' motion for custody is, therefore, not clearly erroneous, and we will not set it aside.

## II. Expert Testimony

[¶ 9] In *Weber v. Weber*, 512 N.W.2d 723, 727 (N.D.1994), this Court said, regarding psychological testimony, "in the absence of a complete study of all of the parties, there is logical frailty in applying a general premise to a specific case." Relying on *Weber*, Kathryn Lukens contends the trial court erred in admitting evidence from Dr. Eileen Searcy, a clinical psychologist employed by the Altru Health System Child Evaluation and Treatment Program, who had not interviewed or evaluated the child or any party to the litigation.

[¶ 10] Nathan Botnen's attorney moved "to qualify Dr. Searcy as an expert in the area of the development of children." Searcy said her understanding "was that I would be asked to give opinions about development in general, not specifically about Hunter." Kathryn Lukens' attorney objected: "Dr. Searcy is here and she has indicated that she has not examined Hunter and I think any testimony she has could be completely irrelevant." The trial court overruled the objection: "Well, I disagree. Your objection is noted. But as she said, she is going to testify with regard to generalities and I think she is qualified. She shall so testify."

[¶ 11] "Relevant evidence means evidence that reasonably and actually tends to prove or disprove any fact that is of consequence to the determination of an action. N.D.R.Evid. 401; *Williston Farm Equip. v. Steiger Tractor, Inc.*, 504 N.W.2d 545, 548 (N.D.1993)." *Wolf v. Estate of Seright*, 1997 ND 240, ¶ 14, 573 N.W.2d 161. "A trial court has wide discretion in deciding whether proffered evidence is relevant, and

we will not reverse a court's decision to admit or exclude evidence on the ground of relevance unless the court abuses its discretion." *Id.*

[¶ 12] The use of expert testimony is governed by N.D.R.Ev. 702:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"N.D.R.Ev. 702 envisions generous allowance of the use of expert testimony if a witness is shown to have some degree of expertise in the field of which he testifies." *State v. Steinbach*, 1998 ND 18, ¶ 12, 575 N.W.2d 193. "Whenever specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, expert testimony is admissible." *Lovcik v. Ellingson*, 1997 ND 201, ¶ 15, 569 N.W.2d 697. "Whether expert testimony is useful, however, falls within the trial court's sound discretion and will not be overturned on appeal absent an abuse of that discretion." *Id.* "The determination to admit or not admit expert testimony rests within the sound discretion of the trial court and will not be reversed on appeal unless the court has abused its discretion." *State v. Steinbach*, 1998 ND 18, ¶ 12, 575 N.W.2d 193. "A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process." *Anderson v. A.P.I. Co. of Minnesota*, 1997 ND 6, ¶ 18, 559 N.W.2d 204.

[¶ 13] A psychological expert can provide the court with a general understanding of the characteristics and needs of children in each stage of development, which can be useful in assessing which potential custodian is best equipped to cope with rearing the children. 2 Sandra Morgan Little, *Child Custody and Visitation Law and Practice* § 11.07 (1998). The trial court could reasonably have determined Dr. Searcy's generalized testimony about child development would be helpful. The general nature of Dr. Searcy's testimony was a matter of weight, rather than admissibility. We conclude the

trial court did not abuse its discretion in allowing Dr. Searcy to testify.

## III. Alternating Physical Custody

[¶ 14] Kathryn Lukens and the Intervenors contend the court's alternating physical custody award is clearly erroneous.

[¶ 15] "Alternating custody orders are often disapproved by the courts." 2 Sandra Morgan Little, *Child Custody and Visitation Law and Practice* § 13.04[2]. "Infants and preschool children have special needs, generally commanding special attention from the courts. Awards rotating the residence of a very young child are presumptively not in the child's best interests and absent some justification will be reversed." *Id.* at § 13.06[4]. We have recognized it is not in the best interests of a child to unnecessarily change custody or to bandy the child back and forth between parents, but we have also concluded split or alternating custody is not per se erroneous. *Kaloupek v. Burfening*, 440 N.W.2d 496, 497 (N.D.1989). To sustain such a custody arrangement, "the district court's findings must support a conclusion that alternating custody is in the best interests of the child." *Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921. "[T]o support an alternating custody arrangement, we require a factual finding it is in the child's best interest, 'because it is generally not in the child's best interests to be bandied back and forth between parents in a rotating physical custody arrangement.' *Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921." *Jarvis v. Jarvis*, 1998 ND 163, ¶ 35, 584 N.W.2d 84.

[¶ 16] The trial court's purpose in ordering alternating physical custody of Hunter was to force the parents "to assume the responsibilities of parenthood," "encourage and assist the parties in re-opening direct communication lines between each other with Hunter's long term best interests at heart," and to allow both parents to "share equally in Hunter's nurturing, care and upbringing." Those goals, however, can be substantially achieved with less disruption in Hunter's care by granting one of the parents primary physical custody and granting the

other parent liberal visitation. The trial court did not make findings indicating its alternating physical custody arrangement was in the best interest of the child. As in *Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶ 15, 575 N.W.2d 921, we must, therefore, "remand for reconsideration and further findings in light of this opinion."

[¶ 17] The judgment is affirmed to the extent it denied the Intervenors' motion for custody. The judgment is reversed to the extent it awarded the parents alternating physical custody, and the matter is remanded for reconsideration and further findings of fact.

[¶ 18] VANDE WALLE, C.J., and MARING and SANDSTROM, JJ., *concur*.

[¶ 19] The Honorable CAROL RONNING KAPSNER was not a member of the Court when this case was heard and did not participate in this decision.