1999 ND 95

**John T. GOFF, Plaintiff, Appellee, and Cross–Appellant,**

v.

**Vicki J. GOFF, Defendant, Appellant, and Cross–Appellee.**

No. 980328.

Supreme Court of North Dakota.

May 20, 1999.

Jonathan T. Garaas, Garaas Law Firm, Fargo, ND, for plaintiff, appellee, and cross-appellant.

Wayne T. Anderson, Fargo, ND, for defendant, appellant, and cross-appellee.

KAPSNER, Justice.

[¶ 1] Vicki Goff appealed from a trial court judgment denying her request to move with her two children to Holland, Michigan. We hold the trial court's findings under the first and fourth *Stout* factors were based on an erroneous interpretation of the law and we therefore reverse and remand.

## I.

[¶ 2] John and Vicki Goff were divorced on December 8, 1997. Judgment was entered pursuant to a stipulation of the parties. Joint legal custody of the parties' two minor children was awarded. Vicki was awarded primary physical custody of the children. John was granted extensive visitation.

[¶ 3] At the time of the divorce, Vicki was employed as a part-time dental hygienist in Fargo. Vicki completed her master's degree in business administration at Moorhead State University shortly after the divorce. She decided to seek full-time employment in the spring of 1998 and sent out over fifty resumes in Fargo–Moorhead. Despite her efforts, Vicki was not offered a full-time position and her part-time position was terminated in June 1998. In July 1998, Vicki accepted an offer for a part-time position as a dental hygienist near Holland, Michigan.

[¶ 4] On July 17, 1998, Vicki brought a motion requesting court permission to move the two children to Michigan. The trial court denied the motion and Vicki appealed. John cross-appealed arguing the trial court abused its discretion by refusing to allow him to introduce evidence regarding Vicki's relationship with her parents prior to the divorce. He contended this evidence was relevant because of Vicki's argument that an advantage to the proposed move would be the close proximity to her extended family.

## II.

[¶ 5] A custodial parent must get judicial permission to move with the children to another state if the noncustodial parent does not consent to the move. N.D.C.C. § 14-09-07. The custodial parent has the burden of proving the proposed move is in the best interests of the children. *Keller v. Keller*, 1998 ND 179, ¶ 10, 584 N.W.2d 509. The trial court is primarily responsible for deciding whether the move is in the best interests of the children and that decision is a finding of fact. *Id.* A finding of fact will not be overturned on appeal unless it is clearly erroneous. *Id.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 6] When deciding whether a proposed move is in the best interests of the child, the trial court must apply the four-factor analysis enunciated in *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.[1]

[¶ 7] The trial court found under *Stout* factors two and three that Vicki's motive to move was not intended to defeat or deter John's visitation rights with his children and John's opposition to the move was motivated solely by his desire to maintain a close relationship with his children. The trial court's findings under these factors are supported by the evidence.

[¶ 8] The trial court found *Stout* factors one and four to be dispositive. Under the first *Stout* factor, the court concluded Vicki failed to prove by a preponderance of the evidence the move would improve the children's quality of life. Applying the fourth *Stout* factor, the court determined an amended visitation schedule would not allow the same amount of contact between John and the children. The trial court denied Vicki's motion to move with the children. We conclude the trial court's analysis demonstrates an erroneous interpretation of the first and fourth *Stout* factors.

## III.

[¶ 9] Vicki argues the trial court's finding under the first *Stout* factor was clear-

---

1. This court recently clarified factor four in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144. We stated the requirement that under the best interests test a trial court must weigh the potential negative impact on the relationship between the noncustodial parent and the child, which may result from the move, under the fourth *Stout* factor. *Id.* Consequently, we reworded factor four without overruling our prior relocation decisions. The fourth *Stout* factor now reads as follows:

   The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic

opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Hawkinson*, at ¶ 9. The trial court's findings in this case were made prior to our decision in *Hawkinson*; however, our ultimate decision would be the same regardless of the recent rewording. It is clear the trial court in this case considered the potential for negative impact on the relationship between the noncustodial parent and the children.

ly erroneous because the court did not properly weigh the prospective advantages of the move. We agree.

[¶ 10] Instead of focusing on the prospective advantages of the move, the trial court's findings under the first factor emphasized the potential negative impact of the move. The trial court found "[u]ndoubtedly, there certainly would be some financial benefit for Vicki to move to Michigan", but concluded the advantage existed because she was unemployed at the time of the motion due, in part, to her own actions. In that context the court reasoned:

> Without ample evidence of such good faith efforts of exploring such opportunities in a proximity to Fargo–Moorhead which would not adversely affect the current almost co-parenting arrangement between John and Vicki with their two young children, this court finds that [Vicki] has failed to establish by a preponderance of the evidence that her proposed relocation would necessarily improve [the children's] quality of life.

[¶ 11] This court considered and rejected a similar analysis under factor one in *Keller*, 1998 ND 179, 584 N.W.2d 509. The custodial parent in *Keller*, at ¶ 14, introduced evidence showing economic and noneconomic benefits to a proposed move to Fort Wayne, Indiana. The custodial parent accepted a position related to her psychology doctorate degree in Fort Wayne. *Id.* The position provided benefits and an opportunity for career advancement. *Id.* Despite evidence it would be difficult for the custodial parent to secure similar employment in Grand Forks, the trial court found the custodial parent failed to prove the economic advantage of the move because she did not apply for employment in Grand Forks or the surrounding area. *Id.* at ¶¶ 14–15. After recognizing the noncustodial parent introduced little evidence to directly contradict the evidence offered by the custodial parent, we concluded the trial court's finding was clearly erroneous. *Id.* at ¶ 15. As in *Keller*, we believe the trial court gave too little consideration to the evidence offered by Vicki of both economic and noneconomic advantages of the move.

[¶ 12] Vicki was unemployed at the time of the relocation motion. John asserts this was a result of Vicki's improper conduct and fur-

ther suggests this goes to a good faith issue relating to her motives. However, the trial court found Vicki's motives were not to defeat or deter John's visitation under factor two. She presented documentation to the trial court to show she distributed over fifty resumes to businesses in the Fargo–Moorhead area with the intent of securing a full-time job as a dental hygienist, or a job which utilized her recently acquired business degree. She also sent resumes to a limited number of businesses in Minnesota and Michigan. Vicki was unsuccessful in her attempts to secure employment in the Fargo–Moorhead area and ultimately accepted a position as a part-time dental hygienist in Holland, Michigan. The trial court's findings indicate it believed Vicki had not adequately explored employment opportunities outside the Fargo–Moorhead area but "within a reasonable driving distance." After receiving evidence of an extensive, but unfruitful, job search in the Fargo–Moorhead area, we do not believe it reasonable for a trial court to suggest a custodial parent must seek employment that would involve a daily commute outside of the community where the parent and children reside. The failure to seek a job that requires such commuting is not appropriate evidence of lack of a good faith effort to find employment.

[¶ 13] Vicki's position in Michigan provided a significant pay increase from her income as a part-time dental hygienist in Fargo; it also offered paid vacation, partial health insurance coverage and retirement, benefits which she had not had from her prior employment. Vicki made arrangements to rent a townhouse in Michigan which was an improvement over the living arrangement she and the children had in an apartment in Fargo. The townhouse was located close to her extended family. Vicki arranged for the children to attend school and daycare. The fact the move would be in closer proximity to Vicki's extended family was dismissed by the trial court's finding that "perhaps Vicki's extended family is not as close knit as the Goff extended family in the Fargo area is." In *Stout*, 1997 ND 61, ¶ 18, 560 N.W.2d 903 and in *Sumra v. Sumra*, 1997 ND 62, ¶ 13, 561 N.W.2d 290, we recognized the improvement of the general quality of life for the custodial

parent ordinarily will indirectly benefit the children. The advantages to the move were not adequately reviewed under the trial court's analysis of the first *Stout* factor. The trial court's findings, if sustained, would impose unreasonable requirements upon custodial parents seeking to improve their financial circumstances through new employment.

[¶ 14] Our recent opinion in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 11, 591 N.W.2d 144, emphasized under the first *Stout* factor, the trial court must weigh the advantages of a move "while recognizing the importance of maintaining continuity and stability in the custodial family." Recognition of the importance of maintaining continuity and stability of the custodial family unit is essential to the best interest analysis. *Id.* at ¶ 12. We will reverse if the trial court's analysis fails to give sufficient credence to the need for keeping the custodial family intact. *Paulson v. Bauske*, 1998 ND 17, ¶ 9, 574 N.W.2d 801. We must recognize a relocation request does not involve a custody determination. That determination has previously been made. Because of the emphasis on maintaining the continuity of the custodial arrangement, consideration of factor one must give due weight to the possibility the move will enhance both the economic and noneconomic aspects of the custodial family unit. This the trial court failed to do as is evidenced by its blending of fourth factor considerations into its analysis of the prospective advantages of the move.

[¶ 15] Here, the trial court's repeated references to a "co-parenting arrangement between John and Vicki" thwarted that important consideration. There was no "co-parenting arrangement" with regard to primary physical custody; Vicki was the children's primary physical custodian. This custodial arrangement was stipulated by the parties. The trial court's findings did not properly weigh the advantages to the move in the context of maintaining continuity and stability in the custodial family under the first *Stout* factor. Thus, we conclude the trial court's findings were based on an erroneous interpretation of the law.

## IV.

[¶ 16] The trial court found under the fourth *Stout* factor "[i]f Vicki's request to remove the children to Michigan were to be granted at this time, in light of the extended and frequent visitation now accorded John as the noncustodial parent, there simply is no practical manner in which John's visitation could be re-fashioned to allow the amount of contact there presently is with his children to continue." This interpretation of the fourth *Stout* factor is clearly erroneous.

[¶ 17] The procedure in N.D.C.C. § 14–09–07 was created to safeguard the visitation rights of a noncustodial parent and to preserve the noncustodial parent's relationship with the child, when the custodial parent wants to move the child out of state. *Bauske*, 1998 ND 17, ¶ 15, 574 N.W.2d 801. This court has long recognized additional costs and distance may make it impossible to maintain the same visitation schedule presently enjoyed by the noncustodial parent and the child if the custodial parent's motion to relocate is granted. *See, e.g., Keller*, 1998 ND 179, ¶ 16, 584 N.W.2d 509. However, "a move sought in good faith and to gain legitimate advantages for the custodial parent and the child must not be denied simply because visitation cannot continue in the existing pattern." *Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903. Distance alone is not a sufficient basis to deny relocation; it must be considered in the context of the ability to re-fashion a visitation schedule that can foster the noncustodial parent/child relationship. *Sumra*, 1997 ND 62, ¶ 17, 561 N.W.2d 290.

[¶ 18] A visitation schedule which provides less frequent, but extended, visitation periods can preserve a noncustodial parent's right to foster and develop a relationship with the child. *Keller*, at ¶ 16; *Bauske*, at ¶ 15. Failure to recognize the possibility a restructured visitation schedule may be adequate renders factor four an automatic reason to deny relocation. *Keller*, at ¶ 16. An analysis which indicates a trial judge's belief that any restructuring must provide an equal amount of visitation time after a move as was enjoyed before the move is an incorrect interpretation of the law.

## V.

[¶ 19] John cross-appealed arguing the trial court abused its discretion by refusing to allow him to introduce three documents re-

lated to Vicki's relationship with her parents prior to their divorce. John argues the evidence is relevant to a determination of whether the proposed move is in the best interests of the children. The trial court concluded the documents were irrelevant.

[¶ 20] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Evid. 401; *In Interest of Lukens*, 1998 ND 224, ¶ 11, 587 N.W.2d 141. A trial court has broad discretion when ruling whether proffered evidence is relevant, and we will not reverse that decision absent an abuse of discretion. *Lukens*, at ¶ 11. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Id.* at ¶ 12.

[¶ 21] Here, the trial court noted the same three documents John attempted to admit at the relocation hearing had been reviewed by the Guardian Ad Litem for consideration during her initial child custody recommendation. The documents related to Vicki's relationship with her parents in 1995 and 1996. Thus, the trial court rejected John's offer of proof concluding the evidence was too remote in time and irrelevant to the relocation motion. We conclude the trial court did not abuse its discretion in refusing to admit the evidence.

## VI.

[¶ 22] The trial court's findings under the first and fourth *Stout* factors were clearly erroneous because they were based on an erroneous interpretation of the law. We reverse and remand for the trial court's determination on Vicki's motion for relocation applying a proper analysis of the first and fourth *Stout* factors.

[¶ 23] NEUMANN, J., concurs.

VANDE WALLE, Chief Justice, concurring in result.

[¶ 24] Having authored the opinion for the majority in *Keller v. Keller*, 1998 ND 179, 584 N.W.2d 509, I agree with Justice Maring this case is similar to *Keller*. I nevertheless concur in the result reached by Justice Kapsner to reverse and remand to permit the trial

court to apply the proper analysis of the factors in *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903 to Vicki Goff's motion to relocate.

[¶ 25] I do so because our Constitution, art. VI, § 4, requires a majority of the Supreme Court to pronounce a decision in this case. Furthermore, N.D.C.C. § 27-02-22 provides:

> The concurrence of a majority of the judges of the supreme court is necessary to pronounce judgment. If a majority does not concur, the case must be reheard, but no more than two rehearings may be had. If on the second rehearing a majority of the judges does not concur, the judgment must be affirmed.

We have no "concurrence of a majority of the judges" without my concurrence in the result, i.e., the remand, required by Justice Kapsner's opinion. If a rehearing on this matter must be held, better it be held before the trial court than this court.

[¶ 26] Gerald W. Vande Walle, C.J.

MARING, Justice, concurring in part and dissenting in part.

[¶ 27] I concur in that part of the majority opinion that concludes the trial court did not abuse its discretion in refusing to admit the evidence offered by John. I also concur in the majority's determination that the trial court's findings under the first and fourth *Stout* factors were clearly erroneous. *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903. I, however, do not agree the case should be remanded back to the trial court for the trial court to apply a proper analysis of the law to the facts of this case. I believe this case is very similar to *Keller v. Keller*, 1998 ND 179, 584 N.W.2d 509.

[¶ 28] The trial court erred when it found Vicki had not substantiated economic and noneconomic advantages to the move and when it found visitation could not be restructured to foster and preserve a relationship between the two minor children and John.

[¶ 29] After a review of the record in this case, I am left with a definite and firm conviction the trial court's finding that it is not in the children's best interests to permit relocation is clearly erroneous, and I would

reverse and remand with instructions the trial court enter a judgment permitting the move and establishing an appropriate visitation schedule for the two minor children and their father.

[¶ 30] Mary Muehlen Maring, J.

SANDSTROM, Justice, dissenting.

[¶ 31] The district court fairly and reasonably applied the so-called *Stout* factors. *See Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903.

## I

[¶ 32] The first *Stout* factor is the "prospective advantages of the move in improving the custodial parent's and child's quality of life." *Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903. The district court reasonably analyzed this factor as requiring an advantage over the current location. What is available in the proposed new location must be compared with what is available in the present location. To establish an advantage in the proposed new location over the present one, there must be a good-faith effort to pursue equal or better opportunities in the present location.

[¶ 33] The district court found as a matter of fact Vicki Goff's lack of good-faith effort to pursue equal or better opportunities in the present location.

[¶ 34] We will not set aside a trial court's finding of fact unless it is clearly erroneous. *Ternes v. Ternes*, 555 N.W.2d 355, 357 (N.D. 1996). " 'A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law.' " *Quamme v. Bellino*, 540 N.W.2d 142, 145 (N.D.1995) (quoting *Mahoney v. Mahoney*, 516 N.W.2d 656, 661 (N.D.Ct.App.1994)). We give great deference to the trial court's opportunity to observe the witnesses and determine credibility. *Urlaub v. Urlaub*, 325 N.W.2d 234, 236 (N.D.1982).

[¶ 35] The district court's finding is supported by substantial evidence, including the nature of Vicki Goff's job search and her statement to another that it was not in her interest to be employed.

## II

[¶ 36] The majority states at ¶ 16:

The trial court found under the fourth *Stout* factor "[i]f Vicki's request to remove the children to Michigan were to be granted at this time, in light of the extended and frequent visitation now accorded John as the noncustodial parent, there simply is no practical manner in which John's visitation could be re-fashioned to allow the amount of contact there presently is with his children to continue." This interpretation of the fourth *Stout* factor is clearly erroneous.

[¶ 37] Contrary to the assertion by the majority in the last sentence of the paragraph, the first sentence is not an "interpretation" of *Stout*, but a finding of fact—one that is undeniably correct, not "clearly erroneous."

## III

[¶ 38] This Court said in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 8, 591 N.W.2d 144, "A trial court must balance the prospective advantages of a proposed move in improving the custodial parent's and the child's quality of life with the potential negative impact on the relationship between the noncustodial parent and the child." Here the district court reasonably found no advantage under the former and disadvantage under the latter.

[¶ 39] The decision of the district court is supported by the law and the evidence, and should be affirmed.

[¶ 40] Dale V. Sandstrom, J.