2006 ND 36

**Jeffery J. MAYNARD, Plaintiff and Appellant**

v.

**Christa M. McNETT, f/k/a Christa M. Maynard, Defendant and Appellee.**

**No. 20050090.**

Supreme Court of North Dakota.

Feb. 8, 2006.

DeAnn M. Pladson, Maring Williams Law Office, Fargo, N.D., for plaintiff and appellant.

Maureen Holman, Serkland Law Firm, Fargo, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]   Jeffery Maynard appeals an order allowing his former wife, Christa McNett, formerly known as Christa Maynard, to move from Fargo, North Dakota, to Bran-

son, Missouri, with their nine-year-old daughter. The district court found that a move to Branson was in the best interests of the child. Because the parents have joint legal and physical custody, the district court erred in allowing one parent to move with the child. We hold that a parent with joint legal and physical custody may not be granted permission to move with the parties' child, unless the district court first determines the best interests of the child require a change in primary custody to that parent. There was no motion to change custody. We therefore reverse.

## I

[¶ 2] Maynard and McNett were married on June 26, 1993. The parties had one child born in 1996. On June 2, 1999, Maynard and McNett were divorced, and the parties stipulated to "joint legal and joint physical custody" of the child. The stipulation was incorporated into the judgment. Following the divorce, the child spent approximately twelve nights per month with Maynard and the remainder of each month with McNett.

[¶ 3] In July 2004, McNett brought a motion to move her child out of state to Branson so she could pursue a job in her field of study, corporate community fitness. If McNett moved to Branson, she planned to take a position managing a "Why Weight? Women's Total Fitness" franchise. McNett's mother had agreed to pay for the start-up costs of the franchise and was planning to open two new "Why Weight?" stores on property she owned near Branson. Maynard, who lives in Fargo, opposed McNett's requested move to Branson, arguing that a move would infringe on his parental rights.

[¶ 4] On August 30, 2004, a hearing was held before judicial referee Scott A. Griffeth. After hearing testimony, the judicial referee granted McNett's motion to move out of state. On September 28, 2004, Maynard requested a review of the judicial referee's decision. On October 21, 2004, after a de novo review of the record, Judge Wade L. Webb issued an order adopting the referee's findings and affirming the decision of the judicial referee. Maynard then moved to amend the findings of fact and judgment. The motion was denied. Maynard attempted to stay the judgment at the district court and this Court, but neither court granted a stay. This appeal followed.

[¶ 5] On appeal, Maynard argues that McNett failed to show that the prospective move would be advantageous and in the best interests of the child, and that the court did not give sufficient weight to the joint physical custody arrangement. McNett argues the court properly weighed the evidence and concluded the move was in the best interests of the child.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–02–04 and §§ 28–27–01 through 28–27–02.

## II

[¶ 7] Section 14–09–07, N.D.C.C., provides a custodial parent "may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, if the noncustodial parent has been given visitation rights by the decree." "The purpose of N.D.C.C. § 14–09–07 is to protect the noncustodial parent's visitation rights if the custodial parent wants to move out of state." *State ex. rel Melling v. Ness,* 1999 ND 73, ¶ 7, 592 N.W.2d 565. In determining whether a custodial parent should be allowed to relocate with a child to another state, the best interests of the

child are the primary consideration. *Negaard v. Negaard,* 2002 ND 70, ¶ 7, 642 N.W.2d 916. The custodial parent has the burden of proving, by a preponderance of the evidence, that a move is in the best interests of the child. *Dickson v. Dickson,* 2001 ND 157, ¶ 7, 634 N.W.2d 76. The trial court's decision that a move is in the best interests of the child is a finding of fact that will not be reversed unless it is clearly erroneous. *Tibor v. Tibor,* 1999 ND 150, ¶ 8, 598 N.W.2d 480. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made." *Id.*

### III

[¶ 8] McNett argues that because the child lived more days per month with her, as directed by the divorce judgment, the trial court properly determined she was the custodial parent. Whether the divorce judgment declared a primary custodian requires an interpretation of the judgment. Interpretation of a judgment is a question of law, and the interpretation of a judgment by a different trial judge than the one who ordered its entry is entitled to no deference.[1] *Anderson v. Anderson,* 522 N.W.2d 476, 478–79 (N.D.1994). North Dakota law recognizes and permits joint legal and physical custody and does not require that the child reside equally with both parents in such an arrangement.

[¶ 9] Under N.D.C.C. § 14–09–06.1:

> An order for custody of an unmarried minor child entered pursuant to this chapter must award the custody of the child to a person, agency, organization, or institution as will, in the opinion of the judge, promote the best interests and welfare of the child. Between the mother and father, whether natural or adoptive, there is no presumption as to who will better promote the best interests and welfare of the child.

Section 1–01–35, N.D.C.C., explicitly provides, "Words used in the singular number include the plural and words used in the plural number include the singular, except when a contrary intention plainly appears." Therefore, the designation of a single custodian is not required. Each parent can be declared a custodian and enjoy all the rights under the law designated to a custodial parent.

[¶ 10] A custody arrangement stipulated to by the parties must be given a great deal of deference, and the parties must be bound by it to provide certainty in future disputes. *Oppegard–Gessler,* 2004 ND 141, ¶ 12, 681 N.W.2d 762. Maynard and McNett stipulated to joint legal and physical custody and should be bound by it. Therefore, we hold that both Maynard and McNett are custodial parents with parenting rights to their child.

[¶ 11] The district court failed to properly analyze the divorce judgment and decree, which established not *a* custodial parent but *joint legal and joint physical custody.* The district court wrote the grant of joint legal and joint physical custody out of the divorce judgment and decree and analyzed the case as though there were only one custodial parent.

[¶ 12] There is, in fact, joint legal and physical custody in this case, and the district court wrongly wrote the joint custody award out of the decree. This is an erroneous view of North Dakota law and ig-

---

1. Justice Kapsner's dissent erroneously analyzes the interpretation of a judgment as a finding of fact, not as a question of law.

nores the parental rights granted to Maynard in the divorce decree.

## IV

[¶ 13] In *Stout v. Stout*, this Court discussed how the courts of North Dakota should decide whether allowing a custodial parent to relocate with a child under N.D.C.C. § 14–09–07 was in the best interests of the child. 1997 ND 61, ¶¶ 7, 34, 560 N.W.2d 903. The Court emphasized that when one parent has sole custody and the other parent has visitation rights, the child will look to the custodial parent for support, and when a custodial parent experiences a psychological adjustment, the child will also. *Id.* at ¶¶ 18, 31 (quoting Judith S. Wallerstein and Tony J. Tanke, *To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce*, 30 Fam. L.Q. 305, 314–15 (Summer 1996)). Relying on *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200, 365 A.2d 27 (1976), this Court developed a four factor test for considering whether a move is in the best interest of a child:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. Whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood

that each parent will comply with such alternate visitation.

*Stout*, at ¶ 34.

[¶ 14] The fourth factor was altered in *Hawkinson v. Hawkinson* to address the negative effect a move can have on the noncustodial parent's relationship with the child:

The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

1999 ND 58, ¶ 9, 591 N.W.2d 144.

[¶ 15] *Stout* recognized, however, the differences between a motion to relocate in a sole custody arrangement and a joint custody arrangement. In *Stout*, the majority said, "We emphasize that motions to relocate are *not* motions for change of custody.... In contrast, in a motion to relocate, the primary physical custody decision has already been made, and custody is *not* the issue." *Stout*, 1997 ND 61, ¶ 54, 560 N.W.2d 903. The majority also said, however, "We recognize that there are cases in which the parents, pursuant to a final decree, share physical custody equally and an original determination of primary custody may be necessary in a motion to relocate by one parent." *Id.* at ¶ 54 n. 7; *see also Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 12, 681 N.W.2d 762 (quoting *Stout* footnote 7, but concluding that the custody arrangement was not a joint custody arrangement). Prior to developing the *Stout-Hawkinson* factors, this Court said in *Benson v. Benson*:

Michael did not assert before the referee, the district court, or this court that, in view of the joint custody ar-

rangement agreed to by the parties and incorporated in the divorce decree, Judith's proposed move with Patrick to the Twin Cities area and its resulting effect on Michael's "shared parenting schedule" would constitute a modification of the custody provisions of the divorce decree requiring Judith to show not only that the move is in Patrick's best interests, but also that there has been a significant change of circumstances since the original divorce decree was entered. *See, e.g., Anderson v. Anderson,* 448 N.W.2d 181, 182 (N.D.1989). Because the parties have neither raised nor addressed this issue, we do not resolve it in this case.

495 N.W.2d 72, 75 n. 3 (N.D.1993).

[¶ 16] This case presents a motion to relocate when there is true joint legal and joint physical custody. As acknowledged by the majority in *Stout,* this case requires a determination of primary custody before McNett may be granted permission to relocate with the child because primary custody has not been decided. To allow one parent to relocate without first deciding primary custody would completely undermine the joint custody rights the parties agreed to share.[2]

[¶ 17] The courts of other jurisdictions have recognized that before a motion to relocate can be granted in joint custody cases, there must be a declaration of primary custody. In *Voit v. Voit,* the father wanted to move from New Jersey to Arizona. 317 N.J.Super. 103, 721 A.2d 317, 319 (1998). He moved for change of custody and permission to relocate with the child. *Id.* at 326. The court said, "This case is first and foremost a request for modification of a joint legal and physical custody agreement." *Id.* The court held

that because its analysis for relocation of a child in primary custody cases would be inappropriate, "to determine whether good cause exists for removal in this true joint-parenting case, this court must apply the standard appropriate to applications for a change in custody." *Id.* The moving parent had to prove there had been a substantial change in circumstances so that the best interests of the child demanded a transfer of custody. *Id.* The court ultimately concluded the father had made no showing why the best interests of the child would be better served in Arizona than in New Jersey. *Id.* at 327.

[¶ 18] In *Brown v. Brown,* the mother wanted to move from Nebraska to New York. 260 Neb. 954, 621 N.W.2d 70, 75 (2000). The mother moved for primary custody of the child and for permission to relocate. *Id.* The general standard in Nebraska for relocation of a child was that the move be for a legitimate purpose and be in the best interests of the child. *Id.* at 77. Because it was a joint custody case, however, the court held the moving party must first prove there had been a material change in circumstances for the court to declare a primary custodian. *Id.* at 78. Although relocation itself was not a *per se* change in circumstances, under the right fact situation, moving with the child could constitute a change in circumstances. *Id.* Therefore, to incorporate the material change in circumstances into its legitimate purpose and best-interests-of-the-child standard for relocation, the court held, "in cases of joint legal and physical custody, a legitimate reason for leaving the state, taken together with an expressed intent to do so, may constitute a material change in circumstances affecting the best interests of a child, sufficient to require examination

---

2. The dissents erroneously analyze the move in this case as one involving a sole custodial parent.

of the best interests of the child." *Id.* The burden of proof is on the relocating party to show that relocation of the child with the parent is a legitimate and material change in circumstances in the best interests of the child. *Id.* at 80. The court applied its relocation best-interest-of-the-child factors, which were similar to *Stout-Hawkinson's*. *Brown*, at 80. The court noted that "[a]s a practical matter, the existence of a joint physical custody relationship is likely to make it more difficult for the relocating parent to meet these burdens," referring to the *Stout-Hawkinson*-like factors. *Brown*, at 78. "This fact, however, is not attributed to a heightened burden of proof, but simply to the unavoidable practical consequences of joint legal and physical custody, and it is considered in the context of whether a proposed move is in the best interests of the child." *Id.* at 80. Justice John Wright noted that, in his opinion, the party seeking to relocate should first prove a modification in custody is needed for the court to declare primary custody, thus wholly separating the issues of change of custody and relocation. *Id.* at 86 (Wright, J., concurring in result).

[¶ 19] In *Ayers v. Ayers,* the Minnesota Supreme Court held that Minnesota's statutory best-interests-of-the-child factors should be applied in a joint custody relocation case rather than the presumption standard that Minnesota follows in a primary custody child relocation case. 508 N.W.2d 515, 520 (Minn.1993). The mother wanted to move from Minnesota to Illinois, so she moved for modification of the custody order and permission to relocate with the child. *Id.* at 518. The court held that the proper standard to apply to the case was the standard for custody modifications. *Id.* at 520. The court concluded the custodial agreement between the parties was for joint custody. *Id.* It also concluded there was a substantial change to the

agreement because, after the move, the father would have almost no custody during the school year. *Id.* The court agreed that the best-interest factors for custody modification should be applied rather than the presumption standard Minnesota follows for primary custody child relocation cases. *Id.*

[¶ 20] Recently, the Nevada Supreme Court considered whether Nevada's relocation statute still applied to joint custody cases after the legislature had amended it. *Potter v. Potter,* 119 P.3d 1246, 1248 (Nev. 2005). The Nevada legislature had removed a specific reference to joint custody in its child relocation statute. *Id.* at 1248–49 (quoting Nev.Rev.Stat. § 125C.200 (2005)). The court held that this omission from the amended statute supported an intent that joint custody cases should be handled differently, and therefore the Nevada change-of-custody statute should be applied. *Id.* at 1249. More telling is that the best-interests-of-the-child factors to be applied were not the relocation factors, which were similar to the *Stout-Hawkinson* factors, but the change-of-custody factors under that body of caselaw. *Potter*, at 1248 n. 3, 1249 n. 14. The logic common to these cases is that relocation motions in joint custody cases are more appropriately analyzed as change-of-custody cases.

[¶ 21] A motion to relocate and the *Stout-Hawkinson* factors alone are inadequate in handling the case of a parent with joint custody of a child wishing to relocate with the child. We hold that a parent with joint legal and physical custody may not be granted permission to move with the parties' child, unless the district court first determines the best interests of the child require a change in primary custody to that parent. A parent with joint custody who wishes to relocate with the child must make two motions: one for a

change of custody, governed by N.D.C.C. § 14–09–06.2, and one to relocate with the child, governed by N.D.C.C. § 14–09–07. The change-of-custody motion requires the party wishing to relocate to show there has been a significant change in circumstances and the best interests of the child would be served by the child's moving with the relocating parent. *McDonough v. Murphy,* 539 N.W.2d 313, 316 (N.D.1995). The best-interests-of-the-child factors in N.D.C.C. § 14–09–06.2 must be applied rather than the *Stout-Hawkinson* factors. *McDonough,* at 317. The *Stout-Hawkinson* factors are designed to address the best interests of the child for cases in which a primary custodian has already been designated and the custodial parent wishes to move. *Stout,* 1997 ND 61, ¶¶ 34, 54, 560 N.W.2d 903. That is not the situation in a joint custody case. No primary custodian has been determined. *Id.* at ¶ 54 n. 7. Therefore, the *Stout-Hawkinson* factors are incapable of addressing the issue fully; and the statutory factors provided in N.D.C.C. § 14–09–06.2 must be used to decide which primary custody arrangement will serve the best interests of the child. The district court may consider the intention of the parent making the motion to relocate with the child in judging the child's best interests under § 14–09–06.2. *See Potter v. Potter,* 119 P.3d 1246, 1250 (Nev.2005) ("The issue is whether it is in the best interest of the child to live with parent A in a different state or parent B in Nevada."); *Chen v. Heller,* 334 N.J.Super. 361, 759 A.2d 873, 885 (2000) (the children's best interests were better served by relocating with their mother to Texas); *Voit,* 721 A.2d at 327 ("after assuming that the doctor will move, this court has simply considered whether going with his father or remaining with his mother is in [the child's] best interests"); *Murnane v. Murnane,* 229 N.J.Super. 520, 552 A.2d 194, 198 (1989) ("If the two parties

claiming custody each proposes to live in a different jurisdiction, the court is bound to take that fact into consideration."). After assuming McNett will move to Missouri, the district court simply has to decide whether the child's best interests are better served with McNett in Missouri or with Maynard in North Dakota. *Voit,* 721 A.2d at 327.

[¶ 22] McNett argues that the *Stout-Hawkinson* factors must be considered when deciding whether, in a true joint custody case, the proposed move is in the best interests of a child. *Stout,* 1997 ND 61, ¶ 34, 560 N.W.2d 903; *Hawkinson,* 1999 ND 58, ¶ 9, 591 N.W.2d 144. As support for her argument, she cites this Court's application of the *Stout-Hawkinson* factors in *Tibor v. Tibor.* 1999 ND 150, 598 N.W.2d 480.

[¶ 23] Actually, this Court's opinion in *Tibor* provides an excellent example of why the *Stout-Hawkinson* test is inadequate in addressing the relocation of a child whose parents share joint custody. After their divorce, the parents shared joint legal and physical custody, with the mother having physical custody for more days per year than the father. *Id.* at ¶ 2. Each party remarried, and the mother moved to have the original judgment amended, granting her primary custody of the children. *Id.* at ¶ 3. The mother's husband then accepted an engineering position in Macon, Georgia, and the mother moved for court permission to relocate with the children. *Id.* at ¶ 4. While holding that the mother was a parent entitled to custody of the child, the majority said, "For purposes of N.D.C.C. § 14–09–07, assuming both parties had physical custody of the children for equal amounts of time, each would be deemed a parent entitled to custody and each would be required to seek court authorization to relocate the children out of state." *Id.* at ¶ 7. This

again recognizes that relocation cases involving joint custody are special, requiring a determination of primary custody before the parent may be allowed to move with the child.

[¶ 24] The majority in *Tibor* then applied the *Stout-Hawkinson* factors to decide whether the move was in the best interests of the children. *Tibor*, at ¶ 9. While applying the first factor, the majority delineated the first factor's considerations:

> Under the first *Stout* factor the trial court must weigh the advantages of the requested move "while recognizing the importance of maintaining continuity and stability in the *custodial* family." *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 11, 591 N.W.2d 144. A trial court's failure to give sufficient credence to the need for keeping the *custodial* family intact constitutes reversible error. *Goff v. Goff*, 1999 ND 95, ¶ 14, 593 N.W.2d 768. The court must give due weight to the possibility the move will enhance both the economic and non-economic aspects of the *custodial* family's life. *Id.* This factor must be considered in light of the importance of maintaining the stability of the *custodial* parent/child relationship. *Hawkinson*, 1999 ND 58, ¶ 12, 591 N.W.2d 144; *Goff*, 1999 ND 95, ¶ 13, 593 N.W.2d 768.

*Tibor*, at ¶ 11 (emphasis added) (footnote omitted). Furthermore, in *Tibor* the majority said, "[t]he children's best interests are inextricably interwoven with the quality of life of the *custodial* parent, with whom they live and upon whom they rely emotionally." *Id.* at ¶ 13 (emphasis added) (citing *Stout*, 1997 ND 61, ¶ 44, 560 N.W.2d 903). In joint custody, however, both parents are custodial parents, so the children's lives are "inextricably interwoven" with the quality of life of both parents, not just one. Allowing one parent to relo-cate will certainly disrupt the stability of the relationship between the other custodial parent and the child and the other custodial parent's family, which includes the child. Therefore, without the court first making a primary custody decision, the *Stout-Hawkinson* test creates the very concerns it seeks to avoid.

[¶ 25] The fourth *Stout-Hawkinson* factor requires the court to consider

> the potential negative impact on the relationship between the *noncustodial* parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the *noncustodial* parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144 (emphasis added). In *Tibor*, the majority said, "A visitation schedule which provides less frequent, but extended, visitation periods will preserve a *noncustodial* parent's ability to foster and develop a relationship with the child." 1999 ND 150, ¶ 24, 598 N.W.2d 480 (emphasis added) (citing *Goff*, 1999 ND 95, ¶ 18, 593 N.W.2d 768). When both parents are custodial parents, however, the bond between the child and each parent is likely to be much stronger. A court cannot consider the noncustodial parent's relationship and try to preserve it, because there is no noncustodial parent. *See Stout*, 1997 ND 61, ¶ 54 n. 7, 560 N.W.2d 903 (no primary custody decision is made in joint custody agreements, so "an original determination of primary custody may be necessary in a motion to relocate by one parent"). Even with modern transportation and means of communication, there is still a great distance between Fargo, North Dakota, and Branson, Missouri. It is doubtful that modern transportation and communication

can overcome the disadvantage of distance created when one custodial parent relocates a child far away from the other custodial parent. *See Newell v. Rammage*, 7 S.W.3d 517, 523–24 (Mo.Ct.App. 1999) (the Missouri Court of Appeals has been less willing to hold that parent-child relationships can be maintained in joint custody cases after a relocation, citing both the difficulty involved in traveling, such as expenses, child fatigue, or inability of the child to travel alone, and the difficulty in maintaining the same level of activity involvement enjoyed by both parents, even if periodic, extended visits are allowed).

[¶ 26] This Court's decision in *Oppegard–Gessler* is also distinguishable. In *Oppegard–Gessler*, the mother was awarded sole physical custody in the divorce judgment, and the father enjoyed "reasonable and liberal visitation." 2004 ND 141, ¶ 2, 681 N.W.2d 762. This Court held that although the father enjoyed "reasonable and liberal visitation," the parties had stipulated to a primary physical custody arrangement and must be bound by that arrangement. *Id.* at ¶ 12. Therefore, under both *Oppegard–Gessler* and *Tibor*, there was a determination of primary custody, whether by party stipulation or court order. This determination is lacking here and must be made before McNett's motion to relocate could be granted.

## V

[¶ 27] There was no motion to change custody and therefore the motion to relocate could not have been properly granted. We reverse.

[¶ 28] LAURIE A. FONTAINE, D.J., and DANIEL J. CROTHERS, J., concur.

[¶ 29] The Honorable LAURIE A. FONTAINE, D.J., sitting in place of MARING, J., disqualified.

KAPSNER, Justice, dissenting.

[¶ 30] I respectfully dissent. There are two main points that I feel the majority opinion has failed to adequately consider. First, there *was* a finding that McNett was the primary custodial parent for purposes of the motion-to-relocate statute and, second, even though there was joint custody, *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 12, 681 N.W.2d 762 and *Tibor v. Tibor*, 1999 ND 150, ¶ 7, 598 N.W.2d 480 state that the motion-to-relocate statute still applies. Because the judicial referee and the district judge properly applied the law and made detailed findings that were not clearly erroneous, I would affirm.

[¶ 31] This case is governed by the terms of the divorce judgment, the court's findings, and our past caselaw. The divorce judgment, which incorporated the parties' stipulation, recognized that the child would reside the majority of the time with McNett. The judgment also stated that for purposes of statutes requiring a determination of custody, McNett would be the custodial parent of the child. The divorce judgment states:

> The plaintiff [Maynard] and defendant [McNett] shall have joint legal and joint physical custody of the minor child.
>
> . . .
>
> The child named in this agreement is scheduled to reside the majority of the time with defendant [McNett]. This parent is designated the custodian of the child solely for purposes of all other state and federal statutes which require a designation or determination of custody. This designation shall not affect either parent's rights or responsibilities under the current parenting schedule.

[¶ 32] Approximately five years after the divorce judgment was filed, McNett requested permission from the district court to move to Branson, Missouri, with the child to pursue a new career opportu-

nity in her field of study. The judicial referee conducted a hearing on the merits of McNett's motion to move out of state. Evidence was presented that the move would be beneficial to the mother and child. The move would have economic advantages of a higher salary and better employment benefits. McNett testified there would also be non-economic benefits of a move to Missouri. McNett would have a more flexible work schedule and would be closer to the child's maternal grandmother. The flexible schedule and the close proximity to the grandmother will better enable McNett to provide care to her daughter.

[¶ 33]   Based on the evidence presented at the hearing, the judicial referee made detailed factual findings, including:

> 2.   The divorce decree awarded the parties joint legal and joint physical custody of the parties' daughter, [] born [] 1996. The decree further provided that [the child] "is scheduled to reside the majority of the time with Defendant."
>
> 3.   The parties have adhered to the intent of the judgment, with [the child] spending approximately 12 nights per month with Plaintiff Jeffery J. Maynard (hereinafter, "Jeff") and spending the remainder of each month with Defendant Christa M. McNett (hereinafter, "Christa"). In addition, even on those days when Jeff has [the child] overnight, [the child] is often with her mother during the day.
>
> 4.   Although Jeff has [the child] approximately 1/3 of the nights, he has never had extended visitation with [the child], with the exception of a one-week visitation in July 1999. The 1999 visitation is the only time in the last 5 years in which Jeff has had [the child] for as long as one week.

[¶ 34]   The judicial referee then made a thorough analysis of the *Stout–Hawkinson* factors. The court noted that McNett's motives for moving out of state were not to deny Maynard contact with his daughter. The court also found that: "Jeff has been involved with his daughter and there is no reason to question his motives in opposing the move." Thus, the case was properly analyzed under factors 1 and 4 of the *Stout–Hawkinson* factors: the prospective advantage of the move and the potential negative impact of the move. The court recognized that although a move out of state would add cost and distance to visitations making it impossible to continue the frequency of visits between Maynard and his daughter, the relationship could still be preserved by a restructured visitation schedule. After weighing these factors, the court concluded, based on the evidence in the record, that a move to Branson, Missouri, was in the best interest of the child.

[¶ 35]   The father requested a review of the judicial referee's decision. The district court, after a de novo review of the record, adopted the judicial referee's findings. The district court came to the same conclusion as the judicial referee: a move to Branson, Missouri, was in the best interest of the child. Specifically, the district court noted that although the divorce decree states the parties are to have joint legal and physical custody, McNett had *primary physical custody* of the child.

[¶ 36]   The North Dakota statute for relocation uses the phrase "parent entitled to the custody of a child" and does not make reference to the custody description in the relevant judgment. *See* N.D.C.C. § 14–09–07. The parties anticipated situations that require a custodial designation. The parties' stipulation, incorporated into the judgment, recognized McNett as "the custodian of the child solely for purposes of all other state and federal statutes

which require a designation or determination of custody."

[¶ 37] Both the referee and the district judge examined the prior judgment and the facts of the custodial arrangements and both determined that McNett was, in fact, the primary physical custodian. Those findings are not clearly erroneous. Both the referee and the district judge analyzed the two applicable *Stout–Hawkinson* factors. None of the findings made in the application of the factors were clearly erroneous.

[¶ 38] I do not feel it is the province of this Court to second guess the district court's factual findings especially given our highly deferential standard of review. Instead, the majority opinion ignores the findings of the trial court, calls this "true joint legal and joint physical custody," and requires a prior motion for change of custody. *See* majority opinion *supra*, at ¶¶ 16, 21. Not only does the majority fail to demonstrate how the court's finding that McNett is the primary physical custodian is clearly erroneous, it declares this a situation of "true joint custody" despite the court's findings and despite the language of the judgment: "The child named in this agreement is scheduled to reside the majority of the time with defendant [McNett]."

[¶ 39] The majority cites *Oppegard–Gessler* for the proposition that "[a] custody arrangement stipulated to by the parties must be given a great deal of deference, and the parties must be bound by it to provide certainty in future disputes." *See* majority opinion *supra*, at ¶ 10 (citing *Oppegard–Gessler*, 2004 ND 141, ¶ 12, 681 N.W.2d 762). But instead of following the divorce judgment in this case, the majority ignores the very language of the stipulation, incorporated into the judgment, which supports the findings of the trial court.

[¶ 40] The second error the majority makes is in failing to recognize our past caselaw. The majority cites to both *Oppegard–Gessler* and *Tibor* without acknowledging that the majority opinion specifically overrules a part of each case. Even though there was joint custody in this ·case, our past caselaw has recognized that the motion-to-relocate statute still applies. The district court correctly‚ followed the law of this State citing *Oppegard–Gessler*, 2004 ND 141, ¶ 12, 681 N.W.2d 762. The district court's order stated:

> The divorce decree states that Christa and Jeff have joint legal and physical custody, but as previously stated, the Referee found that Christa had primary physical custody of [the child] allowing Jeff flexible and liberal visitation. Even when there is joint legal and physical custody, the statute governing a change of the child's residence applies.

[¶ 41] The majority now implicitly overrules in part *Oppegard–Gessler*, at ¶ 12 and *Tibor*, 1999 ND 150, ¶ 7, 598 N.W.2d 480 to the extent that they hold: "Even where there is joint legal custody or joint legal and physical custody, the statute governing a change of the child's residence applies." *Oppegard–Gessler*, at ¶ 12 (citing *Tibor* at ¶ 7 (agreeing with the Minnesota Supreme Court opinions in *Silbaugh v. Silbaugh*, 543 N.W.2d 639, 641 (Minn.1996); *Ayers v. Ayers*, 508 N.W.2d 515, 521 (Minn.1993))). The majority now reverses this holding of *Oppegard–Gessler* and *Tibor*.

[¶ 42] "The rule of stare decisis is grounded upon the theory that when a legal principle is accepted and established rights may accrue under it, security and certainty require that the principle be recognized and followed thereafter." *Dickie v. Farmers Union Oil Co.*, 2000 ND 111, ¶ 13, 611 N.W.2d 168 (citing *Otter Tail Power Co. v. Von Bank*, 72 N.D. 497, 8

N.W.2d 599, 607 (1942)). Uncertainty, both for our courts and for litigants, is the inevitable result of the majority opinion.

[¶ 43] Rather than create uncertainty, I would affirm the district court and follow precedent. In determining whether a parent should be allowed to move with the child, this Court has given substantial weight to the actual custodial relationship, the conduct of the parties, and the divorce judgment. A review of this Court's past decisions shows that the majority's opinion is a deviation from our past precedent in motion-to-relocate cases. In *Stout v. Stout*, this Court recognized the proximity of the extended family was an important consideration in motion-to-relocate cases. 1997 ND 61, ¶¶ 39, 45, 560 N.W.2d 903. In *Olson v. Olson*, we recognized that a $6,500 increase in salary per year, coupled with the opportunity to work in the parents' field of study weighed heavily on the prospective advantage of a move out of state. 2000 ND 120, ¶ 6, 611 N.W.2d 892. In *Paulson v. Bauske*, we recognized that although a move out of state may add cost and distance to visitations making it impossible to continue the frequency of visits between a parent and child, the relationship between the parent and child can be preserved by a restructured visitation schedule. 1998 ND 17, ¶ 15, 574 N.W.2d 801.

[¶ 44] Here, the majority ignores the importance of the extended family in McNett's decision to move, ignores the benefits of an increased salary and more flexible work schedule, and ignores the restructured visitation schedule to preserve the relationship between Maynard and the child. Instead, the majority's reading of the divorce judgment focuses solely on the label of "joint custody" without examining, as did the judicial referee and the district judge, how joint custody is defined in the actual agreement and how joint custody is carried out in the actual custody relationship.

[¶ 45] In *Tibor*, this Court followed the lead of Minnesota cases, holding that the relocation statute, N.D.C.C. § 14–09–07, applies even when "the children spend virtually equal amounts of time with both parties." *Tibor*, 1999 ND 150, ¶ 6, 598 N.W.2d 480. The *Tibor* court anticipated this very situation and was binding precedent on the district court. In *Tibor* we held:

> Under N.D.C.C. § 14–09–07 "[a] parent entitled to the custody of a child" must get judicial permission to change the child's residence to another state if the other parent does not consent to the move. The trial court found "the children spend virtually equal amounts of time with both parties," and concluded Zich "is not a parent entitled to custody" under this provision and, therefore, is not entitled to seek permission to move with the children to another state. We conclude the trial court's interpretation and application of this statute is much too narrow.
>
> In its January 1997 order for amendments to the judgment, the court designated Zich the "primary custodian" of the children. Clearly, she is a "parent entitled to the custody" of the children. Although both parents have physical custody of the children for significant amounts of time, under the judgment Zich has physical custody more of the time than does Tibor. N.D.C.C. § 14–09–07 "specifically requires a custodial parent to seek permission" to change the children's residence to another state. *Hanson v. Hanson*, 1997 ND 151, ¶ 8, 567 N.W.2d 216. For purposes of N.D.C.C. § 14–09–07, assuming both parties had physical custody of the children for equal amounts of time, each would be deemed a parent entitled to

custody and each would be required to seek court authorization to relocate the children out of state. We agree with the analysis of the Minnesota courts. Even where there is joint legal custody or joint legal and physical custody, the statute governing a change of the child's residence applies. The party seeking relocation must comply with the statutory requirements. *Silbaugh v. Silbaugh*, 543 N.W.2d 639, 641 (Minn.1996); *Ayers v. Ayers*, 508 N.W.2d 515, 521 (Minn. 1993). We conclude N.D.C.C. § 14–09–07, applies and requires Zich to seek court approval to move with the children to Georgia.

*Tibor*, at ¶¶ 6–7.

[¶ 46] *Tibor*, like the Minnesota cases on which it relied, recognized that even cases where joint physical custody existed, either parent would be in a position to bring a motion under N.D.C.C. § 14–09–07 with the *Stout–Hawkinson* factors applied to determine the outcome of the motion. The analysis was properly done in this case. I would affirm.

[¶ 47] Carol Ronning Kapsner

VANDE WALLE, Chief Justice, dissenting.

[¶ 48] I agree with much of the analysis in the majority opinion. In particular I would apply that analysis where the parties had joint legal and true joint physical custody. Here, however, as Justice Kapsner notes at ¶ 31 of her dissent, the divorce judgment, entered on stipulation of the parties, provided that McNett would be the designated custodian of the child solely for purposes of all other state and federal statutes which require a designation or determination of custody. I believe N.D.C.C. § 14–09–07 does require a determination of custody and I would apply the stipulated judgment to that statute and conclude McNett is the custodial parent

for purposes of that statute. I therefore would affirm the order of the trial court allowing McNett to change the residence of the child to another state.

[¶ 49] Gerald W. VandeWalle, C.J.