Filed 10/19/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 196

Serena Marsden f/k/a 

Serena Koop, Plaintiff and Appellant

v.

Jason Koop, Defendant and Appellee

No. 20090285

Appeal from the District Court of Nelson County, Northeast Central Judicial District, the Honorable Debbie Gordon Kleven, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Patti Jo Jensen, 1312 Central Avenue North East, P.O. Box 386, East Grand Forks, MN 56721-0386, for plaintiff and appellant.

Bradley Wayne Parrish, 3100 S. Columbia Road, Suite 200, P.O. Box 13417, Grand Forks, ND 58208-3417, for defendant and appellee.

Marsden v. Koop

No. 20090285

Crothers, Justice.

[¶1] Serena Marsden, formerly known as Serena Koop, appeals a district court judgment awarding primary residential responsibility of the parties’ minor children to Jason Koop and dividing the marital property.
(footnote: 1)  We affirm.

I

[¶2] Serena Marsden and Jason Koop were married on June 10, 2000, and have two  children together:  A.J.K. was born in 2003, and A.S.K. was born in 2006.  Marsden and Koop had marital difficulties and started marital counseling in May 2008.  Marsden met Chris Norquay in June 2008 and began a relationship with him in June or July 2008.  Marsden gave birth to G.W.N. in 2009.  Chris Norquay is G.W.N.’s father.  All the children are enrolled with the Canadian Indian Affairs as members of the Fairford First Nations in Manitoba, Canada.

[¶3] Marsden is a Canadian citizen and a United States resident.  She is employed as a child protection worker for Grand Forks County Social Services.  Koop is a United States citizen and is employed as a machinist for Northern Valley Machines in East Grand Forks, Minnesota.  In August 2008, Marsden filed for divorce from Koop, and Koop moved out of the marital home.  During the separation, the children resided with Marsden in the marital home, and Koop had parenting time with his children.

[¶4] The case was tried on July 29, 2009.  At trial, evidence and testimony revealed that in 2003, Marsden inherited a one-third interest in a home and a business in Winnipeg, Manitoba, Canada, after the death of her father.  Marsden has two siblings.  Marsden and her brother bought their sister’s interest in the home with their inheritance money.

[¶5] Koop testified that he received a $8,000 loan from his father and that he spent $5,000 of it on attorney’s fees.  He testified the remaining $3,000 was used for living expenses.  He included the $8,000 loan under his property and debt listing.  He also testified that he does not have a payment schedule or a written agreement for the repayment of the loan, but that he and his father have a mutual understanding.

[¶6] On August 3, 2009, the district court issued its findings of fact, conclusions of law, order for judgment, and judgment, granting the divorce, finding Koop was not G.W.N.’s father and awarding Marsden her maiden name.  The court issued additional findings of fact, conclusions of law, and order for an amended judgment on September 23, 2009.  The amended judgment was filed on October 26, 2009.  The court awarded primary residential responsibility of A.J.K. and A.S.K. to Koop with parenting time to Marsden and provided that the parties share decision-making responsibility.  Marsden was ordered to pay child support to Koop.  The district court divided the property, giving Koop the marital home in Grand Forks and Marsden the property in Winnipeg.  It awarded Marsden the interest in her deceased father’s business, a United States checking account, and a Canadian savings account, subject to a payment of $18,500 to Koop to equalize the property and debt distribution.  The court ordered each party to be responsible for his or her own attorney’s fees.

[¶7] Marsden appeals, arguing the district court clearly erred by (1) awarding primary residential responsibility of the children to Koop; (2) including the $8,000 loan Koop received from his father as a marital debt; and (3) including the home and business interest Marsden inherited in the marital estate.

II

[¶8] “An award of [primary residential responsibility] is a finding of fact which this Court will not disturb unless it is clearly erroneous.”  
McAllister v. McAllister
, 2010 ND 40, ¶ 13, 779 N.W.2d 652 (quoting 
Interest of D.P.O.
, 2003 ND 127, ¶ 6, 667 N.W.2d 590).  “Under N.D.R.Civ.P. 52(a), a finding of fact is clearly erroneous only if it is induced by an erroneous view of the law or, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made.”  
McAllister
, at ¶ 13 (quotation omitted).  This Court has explained the standard of review in a primary residential responsibility determination:

“Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of the witnesses, and we will not retry a custody case or substitute our judgment for a district court’s initial custody decision merely because we might have reached a different result.  This is particularly relevant for custody decisions involving two fit parents.

“A district court cannot delegate to a[n] . . . independent investigator its authority to award custody to the parent who will promote the best interests and welfare of the child.  The district court has discretion to determine what weight to assign to the custody investigator’s conclusions.  The district court does not have to, nor should it, regard a custody investigator’s recommendation as conclusive.”

Heinle v. Heinle
, 2010 ND 5, ¶¶ 6-7, 777 N.W.2d 590 (quotations and citations omitted).  The district court cannot arbitrarily disregard the custody investigator’s report and testimony.  
McAdams v. McAdams
, 530 N.W.2d 647, 650 (N.D. 1995).

[¶9] An initial custody determination requires that the district court award primary residential responsibility of children to the parent who will better promote the best interests and welfare of the children.  
See
 
Klein v. Larson
, 2006 ND 236, ¶ 7, 724 N.W.2d 565.  In determining the best interests of the children, the court must consider all of the relevant factors in N.D.C.C. § 14-09-06.2(1).  
Bernhardt v. Harrington
, 2009 ND 189, ¶ 6, 775 N.W.2d 682.

[¶10] The district court found factors (a), (b), (c), (g), (h), (i), (j), (k), and (l) favored neither parent, no factor favored Marsden, and factors (d), (f), and (m) favored Koop.  The court did not specifically include statutory factor (e) in its analysis and alphabetically designated the remaining factors so that its factors (e) through (l) correspond with the statutory factors (f) through (m).  Where necessary for us to refer to the statutory factors, we use the correct alphabetical designations.

III

[¶11] Marsden argues the district court clearly erred in its analysis of the best interest factors by arbitrarily disregarding the custody investigator’s testimony and report, failing to give appropriate weight to her primary residential responsibility of the children since August 2008, failing to consider the children’s cultural background, erroneously separating the half-siblings, failing to consider the best interests of the children under the factors and making findings not supported by or contrary to the evidence.  After extensive review of the record, we conclude the district court’s findings of fact are not clearly erroneous.

A

[¶12] Marsden argues the district court erred awarding Koop primary residential responsibility when it arbitrarily disregarded the testimony and contrary recommendation of the custody investigator.

[¶13] The district court is not required to follow a custody investigator’s recommendation and has the discretion in deciding what weight to assign to the investigator’s conclusion.  
Wolt v. Wolt
, 2010 ND 26, ¶ 9, 778 N.W.2d 786.  Rather, the district court should take a custody investigator’s report into consideration, but the court must come to its own conclusion.  
Id.

[¶14] In discussing the custody investigator’s conclusion and recommendation, the district court found under factor (m):

“The award of physical custody is a very difficult decision in this case as both Serena and Jason are very capable parents.  The custody investigator recommends that physical custody of the children be awarded to Serena.  This recommendation is based on the investigator’s conclusion that Serena assumes more of the day-to-day care and needs of the children and that Serena provides more emotional support for the children than Jason.  While Serena may have provided more of the day-to-day care of the children at the onset of the divorce, the evidence does not show that Jason ever failed to provide the necessary care for the children or that he is incapable of providing for their care and needs.

. . . . 

“The Court finds that the evidence establishes that Jason is very capable of providing the necessary care for his children, without the assistance of his parents or others.”

The custody investigator’s report also is cited by the court in findings under factor (f).

[¶15] In its opening remarks at trial, the district court informed the parties that it had read the custody investigator’s report twice.  In its findings under factor (m), the district court noted that it considered the custody investigator’s recommendation and that it provided its reasons for reaching a different conclusion.  We conclude the district court did not arbitrarily disregard the custody investigator’s recommendation and testimony.

B

[¶16] Marsden argues the district court failed to give weight to her primary residential responsibility for the children for the year prior to trial.  She also contends “Jason was not an active father” and “Jason was also deficient in simple parenting tasks” so that residential responsibility of the children should be awarded to Marsden rather than to Koop.  Marsden did not argue that the district court misapprehended her intention to move to Winnipeg from North Dakota or that it misapplied the law regarding relocation.

[¶17] Under factor (d), the district court found: 

“
The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity
.  The parties were married in 2000.  Their first child was born in 2003 and their second child in 2006.  Until the parties separated on August 26, 2008, the children have always resided with the parties at their residence . . . .  Because Jason had relatives in the Grand Forks area, it was easier for him to move out of the home when they separated.  Serena stayed in the marital home with their two children.  Jason has parenting time with the children every other weekend from Friday after work until Monday mornings and every Wednesday evening from 5:00 p.m. to 7:45 p.m. following the weekend parenting time.  When he does not have the children for the weekend, he has parenting time on Tuesdays and Thursdays from 5:00 p.m. to 7:45 p.m.

“If Serena is awarded physical custody of the children, she plans to move to Winnipeg, Manitoba, Canada.  At the current time, she does not have a job in Winnipeg or a residence.  It is her intention to reside with her brother until she is able to find employment and a place to live.  The stability of the children’s lives will be impacted by Serena’s decision.  The children have already lost the ability to spend a significant amount of time with their father.  Further, in less than one year’s time they have had a new baby introduced into their changed household and a new father figure.  If Serena is awarded custody, she will cause further instability to the children’s lives as they will move away from their father, their home, their friends, their daycare, and the oldest child’s school.  They will be moving into a new home in Winnipeg and residing not only with Serena, but also with the new baby; Serena’s new male friend, Chris Norquay; and Serena’s brother.  Additionally, Chris has a 4-year old stepdaughter who spends a great deal of time with Chris and Serena.  They expect that Chris’s stepdaughter will continue to be a part of their family.

“If Jason is awarded custody, he plans to remain in the Grand Forks area, reside with the children in the marital home, and continue the children in the day care they have been attending.  This factor favors an award of custody to Jason as he is able to provide a more stable environment.”

[¶18] Under factor (m) the district court found:

“While Serena may have provided more of the day-to-day care of the children at the onset of the divorce, the evidence does not show that Jason ever failed to provide the necessary care for the children or that he is incapable of providing for their care and needs.  When their youngest child was born, the parties agreed that Jason should quit his job and stay at home to care for AJK.  Jason was a stay-at-home father for the first fifteen months of AJK’s life.  Serena agrees that he provided very good care for their child during this period.  The parties jointly decided that AJK should be enrolled in daycare to allow him an opportunity to interact with other children.  Their decision was also based upon financial reasons.  Since that time, both parties have been employed full-time and have been equally involved in the childcare.  The evidence shows that Serena is the parent who usually dropped the children off at daycare and picked them up from daycare, because it worked better with her work schedule than with Jason’s.  Both parents, however, were equally involved in getting the children up and going in the morning.  Jason did testify that after the separation he made arrangements with his work schedule, which will allow him to get the children to daycare, school, and back home if he is awarded custody.

“Serena argues that Jason is too dependent upon his parents for help with the children and, thus, she should be awarded custody.  Jason did testify that since the separation he usually does take the children to Thief River Falls, MN, to visit his parents on the weekends that he has custody.  Jason explained the reason he does this is that the children enjoy being on the farm and spending time with their grandparents, and also, that it is easier for all of them as his basement apartment is too confining.  The Court finds that the evidence establishes that Jason is very capable of providing the necessary care for his children, without the assistance of his parents or others.

“There are too many unknowns in Serena’s life at this time for this Court to award her custody.  At the time of trial her plans were to quit her job, move to Winnipeg and try to find a job, live with her brother until she finds a place for her and the children, and to reside with Chris Norquay.  Serena’s decisions are based entirely on what she feels is best for her own personal life and not the lives of her children.”

[¶19] In 
Burns v. Burns
, this Court stated:

“Factor (d) requires consideration of the stability and quality of the child’s past environment.  
Klein [v. Larson
], 2006 ND 236, ¶ 10, 724 N.W.2d 565.  Factor (d) ‘addresses past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as part of that setting.  It also addresses the quality of that past environment, and the desirability of maintaining continuity.  Under factor d, “prior custody is a factor to be considered when determining the custodial arrangement which is best for the child.”’  
Stoppler v. Stoppler
, 2001 ND 148, ¶ 9, 633 N.W.2d 142 (internal citation omitted).  
See also
 
Eifert v. Eifert
, 2006 ND 240, ¶ 8, 724 N.W.2d 109. . . .  Although more than a physical structure or a geographic location should be analyzed under factors (d) and (e) (the permanence, as a family unit, of the existing or proposed custodial home), 
see
 
Schmidt v. Schmidt
, 2003 ND 55, ¶ 12, 660 N.W.2d 196, a district ‘court’s concerns about maintaining the custodial relationship that existed prior to the divorce and allowing the child to attend the same school and live in the same house are all valid considerations under factor d.’  
Shaw v. Shaw
, 2002 ND 114, ¶ 7, 646 N.W.2d 693.”

2007 ND 134, ¶ 17, 737 N.W.2d 243.

[¶20] Under factor (e), we look to “[t]he permanence, as a family unit, of the existing or proposed custodial home.”  
Hanisch v. Osvold
, 2008 ND 214, ¶ 17, 758 N.W.2d 421 (quotation omitted).  Although there is an overlap “between factors (d) and (e), factor (e) uses a forward-looking approach to the stability of the family unit, its interrelations and environment, versus the backward-looking factor (d).”  
Id.
 (quoting 
Eifert v. Eifert
, 2006 ND 240, ¶ 11, 724 N.W.2d 109).  The interaction and interrelationships with parents, siblings and relatives are appropriately analyzed under factor (e).  
Hanisch
, at ¶ 17.

[¶21] The district court did not separately analyze factor (e), and it appears to have blended its analysis of factors (d) and (e) in its discussion of factors (d) and (m).  Marsden does not claim the district court incorrectly applied the law, and we have held that “[a] separate finding is not required for each statutory factor.”  
Wessman v. Wessman
, 2008 ND 62, ¶ 13, 747 N.W.2d 85.  However, the district court’s findings should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the court’s decision.  
Id.

[¶22] Here, the district court’s analysis about the stability and the quality of the children’s existing home and the homes proposed by each parent can be found in its discussion of factors (d) and (m), which we have quoted above.  There the district court acknowledged Marsden’s care for the children in the marital home after Marsden and Koop separated.  However, a parent residing with the children in the marital home does not assure that parent of being awarded primary residential responsibility.  
See, e.g.
, 
Lindberg v. Lindberg
, 2009 ND 136, ¶¶ 13-14, 770 N.W.2d 252 (district court placing custody with mother did not err notwithstanding fact father was residing in marital home).  Accordingly, the district court looked beyond the one-

year separation and found Koop quit his job to care for the couple’s youngest child for the first 15 months of the child’s life.  The court found that Koop actively parented the children prior to separation from Marsden and that after separation, Koop continued to participate in the children’s lives and never failed to provide necessary care for them.

[¶23] “Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court’s initial custody decision merely because we might have reached a different result.  A choice between two permissible views of the weight of the evidence is not clearly erroneous, and our deferential review is especially applicable for a difficult child custody decision involving two fit parents.”  
Fleck v. Fleck
, 2010 ND 24, ¶ 7, 778 N.W.2d 572 (quoting 
Jelsing v. Peterson
, 2007 ND 41, ¶ 11, 729 N.W.2d 157) (internal citations omitted).  We conclude the district court did not disregard Marsden’s care for the children during her separation from Koop.

C

[¶24] Marsden argues the district court failed to consider the importance of the children’s cultural background.  The record shows the children are enrolled members of the Fairford First Nations.  Marsden contends the children have strong cultural ties to their native tribe and Koop was not interested in her native culture.  She argues Koop would not foster a learning and understanding of the children’s native culture.

[¶25] Our statute does not require the district court to consider cultural background in its decision.  
See
 N.D.C.C. § 14-09-06.2(1).  Some states have codified the importance of a child’s cultural background under the best interest factors of their state child custody statute.  
See, e.g.
, Minn. Stat. Ann. § 518.17(1)(11) (2005); Conn. Gen. Stat. § 46b-56c (2005).  The Indian Child Welfare Act does not apply to an award of custody to a parent in a divorce proceeding, but we recognize that it was enacted in part to recognize and preserve culture.  
Kelly v. Kelly
, 2009 ND 20, ¶ 12, 759 N.W.2d 721.

[¶26] At trial, testimony revealed that while Koop did not attend all “powwows” with Marsden, he had no objection to teaching the children about their cultural background and was interested in developing the children’s cultural background if the children were interested.  Additionally, although Koop had not visited Marsden’s reservation, he testified Marsden had been there only once or twice during the marriage.

[¶27] On the basis of this record and our statute, the district court did not err by failing to provide a finding on this issue.

D

[¶28] Marsden argues the district court erred by separating siblings.  G.W.N., born in 2009, is the children’s half-sibling, and Marsden contends they are a family unit.

[¶29] Generally, courts do not look favorably on separating siblings.  
Dronen v. Dronen
, 2009 ND 70, ¶ 20, 764 N.W.2d 675.

“When deciding whether to split custody, courts have considered, among other factors, the interrelationship of the children, the children’s ages, the similarity of interests, and activities of the children, whether the child previously resided with the custodial parent, the parents’ involvement in the child’s upbringing, the parents’ emotional stability, the parents’ previous lack of cooperation regarding visitation, the child’s preference, parental agreement providing for siblings to be together frequently, and the location of the parents’ residences.”

Id.
  While our decisions generally consider the children of the marriage, we also have considered separation of half-siblings.  
Compare
 
id.
 (holding the district court did not err when it split custody of the three minor children of the marriage); 
BeauLac v. BeauLac
, 2002 ND 126, ¶¶ 16-18, 649 N.W.2d 210 (affirming the district court’s decision to split custody); 
with
 
Stoppler v. Stoppler
, 2001 ND 148, ¶ 7, 633 N.W.2d 142 (noting that while split custody of siblings is generally disfavored, this Court has affirmed it in some cases of half-siblings); 
Ryan v. Flemming
, 533 N.W.2d 920, 924-

25 (N.D. 1995) (affirming the district court’s carefully reasoned decision to split custody between half-siblings).

[¶30] Here, both parties testified there was no possibility Koop was the father of G.W.N.  The district court found Koop was not the father of G.W.N.  The evidence supports the court’s finding.  G.W.N. was born in May 2009.  A.J.K. and A.S.K. had spent very little time in the same home with G.W.N.  Marsden does not state how the children have bonded or how they would be emotionally harmed if separated, and we will not overturn the district court based on speculation or bare argument.  The district court did not err by separating the half-siblings.

E

[¶31] Marsden argues the district court failed to appropriately consider the best interests of the children under the factors and made findings not supported by the record.  She argues the district court clearly erred in finding that factors (a) and (c) favored neither party.

[¶32] Marsden argues the evidence presented at trial showed that she demonstrated a greater capacity and disposition to provide the children with love, affection and guidance and to continue the education of the children under factor (a).  She argues that the evidence did not support the district court’s finding this factor was neutral.  She also argues that, under factor (c), she was the children’s primary care provider and that the court should be concerned about Koop’s ability to provide for the health, safety and well-being of the children while they are in his care.

[¶33] The district court’s findings were not clearly erroneous.  Evidence in the record supports a finding that Koop also has the capacity and disposition to give his children love, affection and guidance and to continue the education of the children.  Koop testified he loves his children, he tells his children he loves them every day, he hugs them and he is “there for them.”  He testified they reciprocate his feelings.

[¶34] Evidence in the record also supports the district court’s finding that neither parent was favored as to factor (c), the ability to provide for the health, safety, and well-being of the children.  Koop testified he stayed at home for fifteen months after one of his children was born.  He also testified that he prepared the children for daycare in the morning, and together, he and Marsden would feed them, clean them and get them ready for bed.  “Under the clearly erroneous standard of review, we do not reweigh the evidence.”  
Heinle
, 2010 ND 5, ¶ 6, 777 N.W.2d 590 (quoting 
Lindberg
, 2009 ND 136, ¶ 4, 770 N.W.2d 252).

F

[¶35] Marsden argues the district court erred in finding factor (f), “the moral fitness of the parents,” favored Koop.  According to Marsden, the district court’s decision was based on a “distaste” for Marsden’s conduct, rather than on the best interests of the children.  She argues she is a morally fit parent and there was no evidence to the contrary.  She contends her relationship with Chris Norquay has been positive for the children.  Relying on the new factor, effective August 1, 2009, “[t]he moral fitness of the parents, as that fitness impacts the child,” she argues that the record does not show her relationship with Norquay negatively impacts the children. 

[¶36] Under factor (f), the district court found:

“This factor favors an award of custody to Jason.  In June of 2008, Serena became acquainted with and started a relationship with Chris Norquay of Winnipeg.  Throughout the summer of 2008, Serena took a lot of weekend trips to Winnipeg.  Sometimes she would travel alone; and at times she would take one child with her and leave the other child in Jason’s care.  Serena became pregnant with Chris’s child, who was born in May of 2009.  Chris has since quit his job in Canada and moved in with Serena and the children.  Serena does not see her actions as having any impact on the children.  This Court disagrees.  Because of her selfish decisions, the lives of the children have been affected.  As soon as she started her relationship with Chris, Serena spent less time in the company of Jason and the children as a family, brought a new sibling into the mix, as well as introducing Chris into the children’s lives as a new father figure.  She could have avoided causing as much disruption to the lives of the children had she simply taken more time in developing a relationship with Chris or at least waited a period of time before introducing him into the family mix.  This factor favors an award of custody to Jason.”

The district court clearly disapproved of Marsden’s actions.  Our decisions recognize an extramarital relationship may be relevant if the children were affected by it.  
See
 
Gregg v. Gregg
, 1998 ND 204, ¶ 10, 586 N.W.2d 312.  The district court found Marsden’s actions negatively impacted her children’s lives.  Evidence in the record supports the district court’s finding so that it is not clearly erroneous.

G

[¶37] Marsden argues the district court erred in its finding factor (h) favored Koop.  Factor (h) provides the district court must consider “[t]he home, school, and community records of the child.”  N.D.C.C. § 14-09-06.2(1)(h).  Under factor (h), the district court found:

“Up until August of 2008, the children had a very stable and satisfactory environment in the martial home with both parents.  After Serena filed for a divorce, their lives became less stable.  The children did not see as much as [sic] Jason, and because of this, their oldest child had difficulty at daycare.  After the children were allowed more contact with Jason, the oldest child started doing better in daycare.  According to the custody investigator’s report, both children struggled more in the mornings when Jason dropped them off at daycare as they did not want him to leave.

“Jason’s parents have also provided a significant amount of stability to the children.  The children are accustomed to seeing their grandparents approximately two times per month.  Usually Jason and the children travel to his parents’ farm near Thief River Falls, MN, one weekend per month, and his parents travel to the Grand Forks are [sic] to visit at least one time per month.  If the children move to Winnipeg with Serena, the frequency of contact with their only living grandparents will decrease significantly.  This factor favors Jason.”

Marsden argues the district court should not have weighed the lack of time spent with Koop after the separation against her because time with parents necessarily changes as a result of separation and divorce.  She also contends the district court should not have considered the time the children spend with their paternal grandparents.

[¶38] We have held that a district court considering the best interests of the child “may appropriately consider . . . the child’s interaction and interrelationships with a party’s extended family and other people, such as childcare providers and others who may significantly affect the child’s best interests.”  
Schmidt v. Schmidt
, 2003 ND 55, ¶ 13, 660 N.W.2d 196.  In 
Schmidt
, we stressed the flexibility we must provide courts in considering whether other people may influence a child’s best interests:

“While many aspects of a child’s existence necessarily change as the result of the break-up of the nuclear family[,] . . . commentators, legislators and the courts have recognized the importance to the child of maintaining stability and continuity to the greatest extent possible.  It is generally thought that the child’s best interest is served if his or her accustomed mode of living or home environment is not abruptly changed.  The relationship of the child with any person who may significantly affect the child’s best interest may be considered by the court.  Thus, the interaction and interrelationship of the child with secondary caretakers, stepparents, and other relatives as well as nonrelatives could be involved.”

Id.
 at ¶ 11 (internal quotations omitted).  This Court also explained that these matters may be appropriately considered under factors (d) or (e).  
Id.
 at ¶ 12.  “A child’s interaction and interrelationships with relatives and others may assist in determining the desirability of maintaining a stable satisfactory environment to the extent possible and in assessing a child’s prospects for a stable family environment.”  
Id.
 at ¶ 13.  The district court made extensive findings under factors (d), (m) and elsewhere that also relate to analysis under factor (h).  The court’s findings were not clearly erroneous.

H

[¶39] Marsden argues the district court erred in finding there was no evidence of domestic violence under factor (j).  In support, Marsden contends Koop admitted he spanked the parties’ oldest child out of frustration.  The district court found under factor (j):  “There is no evidence of domestic violence that would impact an award of custody in this case.”

[¶40] The district court’s finding was not clearly erroneous.  Parents may use reasonable force to discipline their children.  N.D.C.C. § 12.1-05-05(1).  Testimony was presented that Koop spanked his child once.  The testimony revealed that Koop and Marsden subsequently discussed the incident and decided they would not use physical discipline on their children.  There was no evidence of serious bodily injury or harm.  
See
 
Peek v. Berning
, 2001 ND 34, ¶ 13, 622 N.W.2d 186.  We hold the district court’s finding is not clearly erroneous.

[¶41] We conclude the district court’s findings under the best interest factors are not clearly erroneous, and we affirm granting Koop primary residential responsibility of the children.

IV

[¶42] Marsden argues the district court erred in its property division.  Valuation of property is a finding of fact that will only be reversed if it is clearly erroneous.  
Lynnes v. Lynnes
, 2008 ND 71, ¶ 16, 747 N.W.2d 93.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made.”  
Kovarik v. Kovarik
, 2009 ND 82, ¶ 8, 765 N.W.2d 511 (quoting 
Lynnes
, at ¶ 12).

[¶43] Marital property must be equitably distributed between the parties.  
Heinz v. Heinz
, 2001 ND 147, ¶ 5, 632 N.W.2d 443.  “[T]he assets of the marital estate,  regardless of source, must be considered to ensure an equitable division of property.”  
Lynnes
, 2008 ND 71, ¶ 14, 747 N.W.2d 93.  After the district court values the assets, it must divide the marital estate under the 
Ruff-Fischer
 guidelines.  
Hitz v. Hitz
, 2008 ND 58, ¶ 11, 746 N.W.2d 732; 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966); 
Ruff v. Ruff
, 78 N.D. 775, 52 N.W.2d 107 (1952).  Factors to consider include:

“[T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.”  

Ulsaker v. White
, 2009 ND 18, ¶ 9, 760 N.W.2d 82 (quotation omitted).  Under the guidelines, the district court may consider both economic and noneconomic fault.  
McDowell v. McDowell
, 2001 ND 176, ¶ 6, 635 N.W.2d 139.  “[A] substantial disparity must be explained.”  
Lorenz v. Lorenz
, 2007 ND 49, ¶ 6, 729 N.W.2d 692.  “A party’s dissipation of marital assets is a particularly relevant factor in arriving at an equitable distribution of the property.”  
Halvorson v. Halvorson
, 482 N.W.2d 869, 871 (N.D. 1992).  This Court presumes the district court’s valuation of property is correct.  
Dronen
, 2009 ND 70, ¶ 23, 764 N.W.2d 675.  “It is the province of the district court to judge the credibility of witnesses and the evidence they introduce.  When the district court’s valuation is within the range of evidence provided by the parties, the district court’s valuation will not be set aside, unless this Court has a definite and firm conviction a mistake has been made.”  
Id.
 (quoting 
Lynnes
, 2008 ND 71, ¶ 16, 747 N.W.2d 93). 

[¶44] The district court “may award the separate property of one spouse to the other when an equitable distribution so requires.”  
Hogan v. Hogan
, 2003 ND 105, ¶ 20, 665 N.W.2d 672.  “The origin of the property is simply one factor to consider, even if the property was acquired before or inherited during the marriage.”  
Id.
  A gift is a voluntary transfer of personal property made without consideration.  N.D.C.C. § 47-11-06.

A

[¶45] Marsden argues the $8,000 given to Koop by his father was a gift and not a loan.  She contends that it was a voluntary transfer, made without consideration, and that Koop did not provide documentation or verification that the money was a loan.  [¶46] The district court found:

“Serena maintains that she should not be responsible for the $8,000 loan that Jason obtained from his father which was used to pay the retainer for his attorney and the custody investigator.  This Court disagrees.  Throughout this separation, Serena has maintained a savings account in Winnipeg to which Jason had no access.  Serena has access to the funds and the ability to withdraw money to pay a retainer to her attorney and the custody investigator.  Although she contends that all Canadian funds and property were kept separate and never co-mingled with their marital property, the property is still considered a part of the marital estate.  It simply is not fair to allow her to maintain separate funds and, on the other hand, require that all of Jason’s funds be shared by the two of them and their family.  Thus, this Court finds that the debt to [his father] is valid marital debt.”

The court’s findings are supported by evidence produced at trial.  We conclude the district court’s decision to include the loan as debt of the marital estate was not clearly erroneous.

B

[¶47] Marsden inherited a home and business interest after her father passed away.  She argues equity requires the interest to be awarded to her rather than split between the parties.  She contends Koop did not contribute any labor to the house and did not contribute to the business.  Marsden argues she used a portion of the funds of her inheritance to pay marital debt, although she does not point to any evidence that supports her argument.  She argues the inequity without the inheritance was not explained by the district court.

[¶48] Marsden inherited this property during the marriage.  The district court analyzed the 
Ruff-Fischer
 guidelines and divided the property.  The court included the inherited property in the value of the marital estate and awarded Marsden the property, subject to a cash award that Marsden pay Koop to equalize the property and debt distribution.  The district court found:

“All of their property was accumulated during the marriage.  Their one-half interest in the home in Winnipeg and their one-half interest in the proceeds of the sale of Serena’s father’s business is an inheritance Serena received following her father’s death in 2003.  Serena believes that the property she inherited from her father should be awarded solely to her as Jason has not had any involvement with the property.

“As required by law, all of the parties’ property has been considered by this Court in arriving at the conclusion that the parties have a marital estate valued at $218,189.  This includes the property Serena inherited from her father.  Considering the fact that this is a relatively short-term marriage, that the parties have similar earning ability as well as similar necessities, and that approximately 60% of their net worth is a result of Serena’s inheritance, this Court finds that an equitable division of the marital property not [sic] does necessarily mean an equal division.”

[¶49] This Court has “repeatedly held, ‘separate property, whether inherited or otherwise, must initially be included in the marital estate.’”  
Hogan
, 2003 ND 105, ¶ 21, 665 N.W.2d 672 (quotation omitted).  The district court properly included the property in which Marsden inherited an interest during the marriage, and Marsden was awarded a substantially larger portion of the marital estate than Koop.  Marsden was awarded her inherited property, subject to a cash payment to Koop.  The district court recognized Marsden was actually receiving a substantially larger share of the estate.  The district court did not err by including the inherited property in the marital estate and equitably dividing it.

V

[¶50] We affirm the district court’s award of primary residential responsibility to Koop and affirm the property division.

[¶51] Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

Maring, Justice, concurring in part and dissenting in part.

[¶52] I concur in parts I, II, III (A), (C), (D), (E), (F), (G), and (H), and IV of the majority opinion.  I respectfully dissent from part III (B).

[¶53] I respectfully dissent because this case presents the issue of what analysis is to be applied when the request to relocate is being made at the time of the initial divorce.  This case involves an original custody determination and a parent who informed the trial court she would “like” to relocate.  The trial court analyzed the custody case as if the parent, Marsden, had moved to Winnipeg, Canada.  Marsden testified:

Q: I understand you would like to move back to your home in Winnipeg; is that correct?

A: That’s correct.

Q: I assume you are asking the court to accept Ms. Pettit’s recommendation that you be allowed to relocate your children to the Winnipeg area; is that correct?

A: Yes, I am.

. . . . 

Q: If you are able to relocate, if the judge grants that request, what are your plans for employment?

A: I would have absolutely no problem finding employment in Winnipeg.  

After the trial court awarded Koop primary residential responsibility of the children, Marsden filed an affidavit in support of a motion to stay in which she provided:  “I have no intention of leaving Grand Forks while this case is being appealed and further, if the appeal is unsuccessful, I have no intention of leaving Grand Forks.”  It appears there was a misunderstanding as to whether Marsden would move to Winnipeg if she was not granted primary residential responsibility of her children and allowed to relocate.  In applying N.D.C.C. § 14-09-06.2(1)(m), “[a]ny other factors considered by the court to be relevant to a particular child custody dispute,” the trial court found:

There are too many unknowns in Serena’s life at this time for this Court to award her custody.  At the time of trial her plans were to quit her job, move to Winnipeg and try to find a job, live with her brother until she finds a place for her and the children, and to reside with Chris Norquay.  Serena’s decisions are based entirely on what she feels is best for her own personal life and not the lives of her children.

The custody investigator also assumed Marsden would move whether she received permission to relocate or not.  The custody investigator stated in her report:  “If this analysis were to take place without Serena’s desire to move to Winnipeg, she would be chosen as the primary custodian.”

[¶54] This Court’s review on appeal of a relocation decision has generally been presented after the trial court has made the initial primary residential responsibility determination in the original divorce decree.  
See
 
Kienzle v. Yantzer
, 2007 ND 167, ¶ 2, 740 N.W.2d 393; 
Tishmack v. Tishmack
, 2000 ND 103, ¶ 2, 611 N.W.2d 204. This case is distinguishable because it involves both an initial primary residential responsibility determination and a parent who wishes to relocate with her children.  We have addressed the question of a relocation in conjunction with an initial custody determination in 
Sumra v. Sumra
, 1997 ND 62, 561 N.W.2d 290.  However, 
Sumra
 is distinguishable from this case because the father in 
Sumra
 did not contest on appeal the trial court’s award of custody to the mother.  
Id.
 at ¶¶ 5-6.  He only contested the trial court’s decision to grant permission to the mother to move with the children to Wales.  
Id.
  Our Court concluded that the trial court had considered the statutory best interests of the child factors in deciding physical custody and had also considered the 
Stout
 factors in deciding whether to grant permission to relocate the children.  
Id.
 at ¶¶ 6, 9, 18; 
see
 
Stout v. Stout
, 1997 ND 61, 560 N.W.2d 903.

[¶55] With regard to relocation of children, N.D.C.C. § 14-09-07 (2009)
(footnote: 2) states:

A parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, if the noncustodial parent has been given visitation rights by the decree.  A court order is not required if the noncustodial parent:

1. Has not exercised visitation rights for a period of one year; or

2. Has moved to another state and is more than fifty miles [80.47 kilometers] from the residence of the custodial parent.  

Our Court has recognized that relocation decisions are difficult because a trial court must weigh the competing interests of a parent who desires to seek a better life for herself and the children in a different geographical area; the children’s interest in maintaining a meaningful relationship with the other parent; the other parent’s interest in maintaining a meaningful relationship with the children; and the state’s interest in protecting the best interests of the children.  
Schmidt v. Bakke
, 2005 ND 9, ¶ 17, 691 N.W.2d 239.  These decisions are made even more difficult when the request to relocate is combined with an initial primary residential responsibility determination.

[¶56] Although our Court has previously analyzed relocation issues, we have never provided clear guidance as to how trial courts should analyze cases involving an initial custody decision and a request to relocate.  There are at least four scenarios that may arise when there is a request to relocate with a child:  (1) a parent requests relocation at the time of an initial primary residential responsibility determination; (2) a parent who has primary residential responsibility requests relocation; (3) a parent without primary residential responsibility moves for a change of primary residential responsibility at the same time the parent with primary residential responsibility moves for relocation; and (4) a parent with equal residential responsibility moves for both primary residential responsibility and relocation of the children.  In each of these situations, the parent requesting to relocate with the children may take one of two positions:  (1) he will relocate regardless of whether he is granted permission to move with the children, or (2) he will not relocate, if he is not granted permission to move the children.

[¶57] This case involves the first of the four scenarios.  When a party indicates a desire to relocate with the children during the determination of initial primary residential responsibility, I am of the opinion the trial court must determine whether the parent will move regardless of whether the court grants permission to relocate with the children or not.  If the parent indicates he will not move without the children, the court must first determine primary residential responsibility under the best interests of the child factors, and then consider the parent’s request for relocation under the 
Stout-Hawkinson
 factors.  
See
 
Hawkinson v. Hawkinson
, 1999 ND 58, ¶¶ 6, 9, 591 N.W.2d 144; 
Stout
, 1997 ND 61, ¶ 34, 560 N.W.2d 903; 
see, e.g.
, 
Dunn v. Dunn
, 2009 ND 193, ¶¶ 21-22, 775 N.W.2d 486 (Maring, J., specially concurring); 
Maynard v. McNett
, 2006 ND 36, ¶ 21, 710 N.W.2d 369.  The analysis under the best interests of the child factors should be based on the current circumstances and location of the parties.  If the parent seeking relocation receives primary residential responsibility, then the trial court must analyze the 
Stout-Hawkinson
 factors to decide whether to allow the move.  
See
 
Jelsing v. Peterson
, 2007 ND 41, ¶¶ 17-18, 729 N.W.2d 157 (affirming the district court’s decision that the case was an original custody proceeding, award of custody after analysis of the “best interests” factors based on existing circumstances and decision to grant the request to move after analyzing the issue under the 
Stout-Hawkinson
 factors).

[¶58] The 
Stout-Hawkinson
 factors provide: 

1. The prospective advantages of the move in improving the custodial parent’s and child’s quality of life, 

2. The integrity of the custodial parent’s motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent, 

3. The integrity of the noncustodial parent’s motives for opposing the move, 

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent’s relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

Hawkinson
, 1999 ND 58, ¶¶ 6, 9, 591 N.W.2d 144; 
Stout
, 1997 ND 61, ¶ 34, 560 N.W.2d 903.  Other jurisdictions have addressed initial custody cases involving a relocation using a similar analysis.  In 
Valkoun v. Frizzle
, the Rhode Island Supreme Court held that the trial court had correctly applied the best interests of the child factors to first evaluate custody. 973 A.2d 566, 575-79 (R.I. 2009).   Then, the trial court analyzed Rhode Island’s relocation factors in light of the mother’s request to relocate her children.  
Id.
; 
see also
 
Dupre v. Dupre
, 857 A.2d 242 (R.I. 2004).

[¶59] The  exception to this approach would be where the parent has indicated he will relocate without the children or has already relocated.  Under those circumstances, it would be appropriate to consider the parent’s new location and home under the best interest factors.

[¶60] While I recognize that some of the best interests of the child factors and the 
Stout-Hawkinson
 factors will necessarily overlap, the trial court must consider not only the best interests of the child factors in deciding which parent is granted primary residential responsibility, but also the 
Stout-Hawkinson
 factors in deciding whether it should allow that party to relocate the children.

[¶61] Our case law is well-established and the 
Stout-Hawkinson
 factors provide the trial court an opportunity to consider the advantages to the primary parent, the improvement in the quality of the child’s life, the parents’ motives for supporting and opposing the relocation, and the potential negative impact on the parent without primary residential responsibility and the opportunity to preserve that relationship.  
See
 
Hruby v. Hruby
, 2009 ND 203, ¶ 9, 776 N.W.2d 530; 
Kienzle
, 2007 ND 167, ¶ 13, 740 N.W.2d 393; 
Gilbert v. Gilbert
, 2007 ND 66, ¶ 8, 730 N.W.2d 833.

[¶62] In the present case, Marsden sought primary residential responsibility of her children and permission to relocate to Winnipeg.  The trial court analyzed the original custody decision as though Marsden was already living in Winnipeg while, in fact, she was living in the family home with the parties’ children.  Because Marsden indicated she will not move without her children, the trial court should analyze the best interests of the child factors to determine primary residential responsibility based on Marsden’s existing circumstances and location.  If the court awards primary residential responsibility to Marsden, the court must then analyze the potential relocation under the 
Stout-Hawkinson
 factors.

[¶63] In this case, the trial court erred by failing to apply the best interests of the child factors first to existing circumstances and then the 
Stout-Hawkinson
 factors to the request to relocate.  The trial court misapprehended Marsden’s intent to move without her children.  Therefore, I would reverse and remand for the court to properly analyze Marsden’s request for primary residential responsibility first and then, if she is granted primary residential responsibility, her request to relocate with the children.  [¶64] Mary Muehlen Maring

FOOTNOTES
1:
The legislature amended N.D.C.C. ch. 14-09 during the 2009 session.  Effective August 1, 2009, “custody” and “visitation” are called “primary residential responsibility” and “parenting time.”  2009 N.D. Sess. Laws ch. 149, § 4.  When appropriate, this decision uses terminology of the amended statutes even though this case was filed and tried while the prior version of law was in effect.

2:
Effective August 1, 2009, N.D.C.C. § 14-09-07 was amended to provide:

1. A parent with primary residential responsibility for a child may not change the primary residence of the child to another state except upon order of the court or with the consent of the other parent, if the other parent has been given parenting time by the decree.

2. A parent with equal residential responsibility for a child may not change the residence of the child to another state except with consent of the other parent or order of the court allowing the move and awarding that parent primary residential responsibility.

 

2009 N.D. Sess. Laws ch. 149, § 8.  However, N.D.C.C. § 14-09-06.2(1)(2009) was in effect at the commencement and trial of the present case.